# EXHIBIT A

| STATE OF INDIANA | ) | MARION COUNTY SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: _____ |

| JANE DOE,[1] | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) |
| NETFLIX, INC.; NETFLIX WORLDWIDE ENTERTAINMENT, LLC; and BLUMHOUSE PRODUCTIONS, LLC, | ) **JURY DEMAND** |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY

Plaintiff Jane Doe[1] ("Plaintiff"), for her Complaint against Defendants Netflix, Inc., Netflix Worldwide Entertainment, LLC, and Blumhouse Productions, LLC (together, "Defendants"), alleges as follows:

## THE PARTIES

1. Plaintiff is an adult individual residing in Marion County, Indiana. She is a citizen of Indiana.

2. Defendant Netflix, Inc. is a Delaware corporation with a principal place of business in California.

3. Defendant Netflix Worldwide Entertainment, LLC is a Delaware LLC with a principal place of business in California.

4. Together, Defendants Netflix, Inc. and Netflix Worldwide Entertainment, LLC are referred to as Netflix.

---

[1] Plaintiff will file a motion to seal her true name due to the sensitive nature of issues herein.

5. Defendant Blumhouse Productions, LLC ("Blumhouse") is a Delaware LLC with a principal place of business in California.

## PERSONAL JURISDICTION

6. This Court has personal jurisdiction over Defendants.

7. Defendants expressly aimed their conduct described herein at Indiana.

8. Netflix's website touts "Our Father" as the "story of Donald Cline, an Indianapolis fertility doctor who secretly used his own sperm to impregnate countless victims" and admits that filming occurred "in Indiana."[2]

9. Blumhouse's official Twitter account authored a Tweet on April 14, 2022 advertising the "Our Father" documentary "on @Netflix," providing a link to the documentary, and stating: "The unimaginable rocked this small town…" The embedded video clip following this text identifies the "small town" as "Indianapolis."

10. Blumhouse and Netflix personnel repeatedly and continuously traveled to Indiana and Indianapolis to create the documentary at issue in this case.

11. The documentary at issue in this case is about Indianapolis, Indiana.

12. The documentary at issue in this case consists principally of video footage from the state of Indiana.

13. The majority of the individuals appearing in the documentary at issue in this case are residents of the state of Indiana.

14. The documentary at issue in this case repeatedly mentions Indiana.

15. On information and belief, Netflix has at least one million viewers in the state of Indiana.

---

[2] https://www.netflix.com/tudum/articles/our-father-director-interview-lucie-jourdan

16. On information and belief, at least 250,000 Indiana residents have viewed the "Our Father" documentary.

17. Defendants knowingly and intentionally published the private information of Plaintiff to hundreds of thousands of Indiana residents.

18. At all material times, Defendants knew that Plaintiff was and is a resident of Indiana.

19. Defendants directed relevant communications and conduct to Plaintiff while she was a resident of Indiana, while she was physically present in Indiana, and with knowledge of these facts.

20. Plaintiff felt the brunt of the harm alleged herein in the state of Indiana. She is a resident of Indiana. The reputational harm alleged herein damaged her reputation among her peers in this state.

21. Plaintiff's personal property rights appropriated by Defendants are situated in Indiana.

## THE DISCOVERY OF DR. CLINE'S ACTIONS

22. During "the 1970s and '80s, a fertility specialist in Indiana named Dr. Donald Cline inseminated dozens of patients with his own sperm, without their knowledge or consent."[3]

23. These women were told by Dr. Cline that "the donors he used were medical residents" and that "he used each donor for only three successful pregnancies."[4]

24. It is estimated that these women bore at least 94 secret children of Dr. Cline without knowing that Dr. Cline was their true biological father (the "Secret Children").[5]

---

[3] https://time.com/6176310/our-father-true-story-netflix/
[4] https://www.theatlantic.com/magazine/archive/2019/04/fertility-doctor-donald-cline-secret-children/583249/
[5] https://time.com/6176310/our-father-true-story-netflix/

3

25. In approximately 2015, some of the Secret Children began taking at-home DNA tests through an online service. These Secret Children were alerted that they had several biological half siblings. These Secret Children discovered that they shared a biological father, Dr. Cline.[6]

26. Eventually, Dr. Cline pled guilty to two counts of obstruction of justice.[7]

27. As a result of these circumstances, the Indiana Legislature passed a "fertility fraud" statute,[8] which includes felony consequences.[9]

### PLAINTIFF'S DISCOVERY OF HER BIOLOGICAL FATHER

28. In 2019, Plaintiff took a DNA test through an online service.

29. The DNA test revealed that Plaintiff had several biological half siblings.

30. As a result of the DNA test, Plaintiff discovered that she was one of Dr. Cline's Secret Children.

31. Neither Plaintiff nor her family knew that Plaintiff was one of the Secret Children until after the DNA test.

32. The fact that Plaintiff is a Secret Child was kept private. Plaintiff held this fact in close confidence.

33. Certain of Plaintiff's biological half siblings were able to see her identity through the DNA website. This information was kept secured to a limited number of persons, namely, certain of the biological half siblings, through passwords and other means.

---

[6] https://time.com/6176310/our-father-true-story-netflix/
[7] https://time.com/6176310/our-father-true-story-netflix/
[8] https://fox59.com/indianapolitics/how-indiana-law-has-changed-since-our-father-fertility-doctor-scandal/
[9] https://www.wrtv.com/news/politics/governor-signs-fertility-fraud-and-deception-bill-into-law

## DEFENDANTS' CREATION OF THE DOCUMENTARY, ITS WIDESPREAD PUBLICATION, AND DEFENDANTS' FAILURE TO SAFEGUARD PLAINITFF'S IDENITY AS A SECRET CHILD

34. In approximately 2020, Defendants began creating a documentary entitled "Our Father."

35. The documentary contains interviews with some of the Secret Children and their parents, "as well as others close to the situation," and it "chronicles the [half] siblings' path to uncovering the truth of their biological parentage, and spotlights their fury and resolve as they failed to see Cline answer for his crimes in court."[10]

36. Defendants contacted many of the Secret Children. Defendants offered these Secret Children the opportunity to discuss being on camera for the documentary and to submit photos. Defendants made clear to these Secret Children that no Secret Child would be identified in the documentary without his or her explicit consent.

37. On April 26, 2021, Defendants, through Producer Michael Petrella, wrote to Plaintiff and other Secret Children: "I know that some of you were more comfortable than others being involved…. You will not be identified (unless you've already given us explicit permission to do so…." (the "Non-Identification Pledge").

38. Plaintiff relied upon the Non-Identification Pledge. Plaintiff never provided authorization or consent for Defendants to utilize her name, image, or likeness in any way. Plaintiff never provided authorization or consent for Defendants to identify her as a Secret Child. Plaintiff never provided authorization or consent to appear in the documentary in any way.

---

[10] https://time.com/6176310/our-father-true-story-netflix/

39. Netflix and Blumhouse reviewed and approved the Non-Identification Pledge. Producer Michael Petrella acted as an agent for Netflix and Blumhouse in issuing the Non-Identification Pledge. Producer Michael Petrella issued the Non-Identification Pledge on behalf of Netflix and Blumhouse. Netflix and Blumhouse made other written statements similar in content to the Non-Identification Pledge.

40. In approximately mid-May 2022, the documentary was released on the internet video streaming service "Netflix."

41. The "Netflix" service is owned and operated by Netflix.

42. The documentary was produced by Blumhouse.

43. Netflix and Blumhouse created the documentary.

44. Netflix and Blumhouse authored the documentary.

45. Netflix and Blumhouse approved the content of the documentary.

46. Netflix and Blumhouse published the documentary to the world.

47. Netflix and Blumhouse distributed the documentary to the world.

48. Netflix and Blumhouse profited from the documentary.

49. Netflix has more than 70 million subscribers in the United States.

50. The documentary was listed as "Trending Now" on the "Netflix" service, was identified as a "Top 10" on the "Netflix" service, and was listed as the "#2 Movie" on the "Netflix" service. The documentary was featured on the front page of the "Netflix" service.

51. On May 12, 2022, Jason Blum, the CEO of Blumhouse, issued a celebratory Tweet stating: "Yea baby. That's our movie!!! Number 1!" The Tweet featured an image of the "Our Father" poster with a large number "1" superimposed under the heading "Top 10 Movies in the U.S. Today."

52. The documentary was viewed by millions of people in May 2022 alone. This included hundreds of thousands of Indiana residents.

53. The documentary identifies Plaintiff as a Secret Child by listing her name and photograph as a Secret Child "match."

54. Plaintiff did not authorize Defendants to disclose her status as a Secret Child.

55. Defendants "blurred" the names and photographs of numerous Secret Children in the documentary. Defendants did not afford this protection to Plaintiff.

56. The Non-Identification Pledge was false and misleading. Defendants stated in writing to Plaintiff that she "[would] not be identified" as a Secret Child because she did not give "explicit permission to do so." Defendants then identified Plaintiff to the world as a Secret Child.

57. Plaintiff did not know of Defendants' disclosure of her identity as a Secret Child until May 2022.

58. Defendants' publication of Plaintiff's identity as a Secret Child has caused Plaintiff severe harm, including, but not limited to, reputational injury, distress, embarrassment, and emotional trauma.

59. The conduct at issue in the documentary has been variously described as "disgust[ing],"[11] "horrific,"[12] "chilling,"[13] "sicken[ing],"[14] "disturbing,"[15] and "crazy."[16]

---

[11] https://www.tyla.com/tv-and-film/our-father-viewers-disgusted-over-dr-clines-lenient-penalty-20220516
[12] *Id.*
[13] https://www.hellomagazine.com/film/20220512140010/our-father-viewers-saying-same-thing-netflix-documentary/
[14] *Id.*
[15] *Id.*
[16] *Id.*

60. Netflix has described the conduct at issue in the documentary as "sickening" and "horrifying."[17] Blumhouse has described the conduct at issue in the documentary as "unimaginable,"[18] "sinister,"[19] and "insane."[20]

**DEFENDANTS' FURTHER PUBLICATION OF PLAINTIFF'S SECRET CHILD STATUS**

61. Defendants continued their unauthorized publication of Plaintiff's Secret Child status in forums beyond the documentary.

62. On April 14, 2022, Blumhouse's official Twitter account published a Tweet stating: "We've got the chills. The unimaginable rocked this small town by revealing over 90 siblings and counting…watch as one fertility doctor's sinister secret unfolds in #OurFather, on @Netflix May 11. Netflix.com/OurFather." This text was followed by an embedded video clip with the Netflix logo prominently displayed in the upper right hand corner. Within the video clip, Plaintiff's name and image appear and are identified as a Secret Child.

63. On April 14, 2022, Jason Blum, the CEO of Blumhouse, published a Tweet stating: "A small town, one doctor, over 90 sibilings…and counting. My jaw was on the floor and I think yours will be too. #OurFather, on @Netflix May 11. Netflix.com/OurFather." This text was followed by an embedded video clip with the Netflix logo prominently displayed in the upper right hand corner. Within the video clip, Plaintiff's name and image appear and are identified as a Secret Child.

64. On April 14, 2022, Blumhouse's official Facebook account published a post stating: "We've got the chills. The unimaginable rocked this small town by revealing over 90

---

[17] https://www.facebook.com/watch/?v=416688849915132
[18] https://twitter.com/blumhouse/status/1514634908773359617
[19] *Id.*
[20] https://twitter.com/jason_blum/status/1524434307091243010

8

siblings and counting...watch as one fertility doctor's sinister secret unfolds in #OurFather, on @Netflix May 11. Netflix.com/OurFather." This text was followed by an embedded video clip with the Netflix logo prominently displayed in the upper right hand corner. Within the video clip, Plaintiff's name and image appear and are identified as a Secret Child. This post has more than 575,000 views.

65. On April 14, 2022, Netflix's official Twitter account published a Tweet stating: "A top fertility doctor had a sickening secret: he was using his own sperm. Decades later, his 'children' band together to pursue justice. Our Father premiers May 11." This text was followed by an embedded video clip with the Netflix logo prominently displayed in the upper right hand corner. Within the video clip, Plaintiff's name and image appear and are identified as a Secret Child. This Tweet has more than 1.9 million views.

66. On April 14, 2022, Netflix's official Facebook account published a post stating: "A top fertility doctor had a sickening secret: he was using his own sperm. Decades later, his 'children' band together to pursue justice. Our Father is coming to Netflix, 11 May." This text was followed by an embedded video clip with the Netflix logo prominently displayed in the upper right hand corner. Within the video clip, Plaintiff's name and image appear and are identified as a Secret Child.

67. On April 25, 2022, Netflix's official Facebook account published a post stating: "A top fertility doctor had a sickening secret: he was using his own sperm. Decades later, his "children" band together to fight for justice. True-crime documentary, OUR FATHER, only on Netflix May 11." This text was followed by an embedded video clip with the Netflix logo prominently displayed in the upper right hand corner. Within the video clip, Plaintiff's name and image appear and are identified as a Secret Child. This post has over 266,000 views.

## COUNT ONE
## PUBLIC DISCLOSURE OF PRIVATE FACTS

68. Plaintiff incorporates by reference the preceding paragraphs.

69. Defendants disclosed information of Plaintiff.

70. The information was private in nature.

71. The information was factually true.

72. The information was privately held.

73. The information was not open to public inspection and it was not already public.

74. Defendants' disclosure was made to the public.

75. Defendants' disclosure was to a large enough number of persons such that the matter is sure to become public knowledge.

76. Defendants' disclosure was highly offensive and would be considered highly offensive to a reasonable person.

77. Defendants' disclosure offends society's accepted, communal norms and social mores.

78. A reasonable person would feel justified in feeling seriously aggrieved by Defendants' disclosure.

79. The information disclosed was not of legitimate public concern.

80. Plaintiff is not a voluntary public figure.

81. The information disclosed is not "news."

82. Plaintiff has been damaged by Defendants' disclosure.

## COUNT TWO
## CRIME VICTIM'S RELIEF ACT – DECEPTION

83. Plaintiff incorporates by reference the preceding paragraphs.

84. Defendants made false and misleading written statements to Plaintiff.

85. Defendants made these false and misleading written statements with the intent to obtain property.

86. Defendants made these false and misleading written statements knowingly and intentionally.

87. Defendants knew the false and misleading statements were false and misleading at the time they were made and thereafter.

88. Defendants' false and misleading written statements constitute deception, a class A misdemeanor, under Ind. Code § 35-43-5-3(2).

89. Although Ind. Code § 35-43-5-3 was repealed effective July 1, 2021, see 2021 Ind. HEA 1115 (LEXIS) § 45, the Indiana Legislature simultaneously provided that this repeal did not affect crimes committed before July 1, 2021. See id. § 1 (codified at Ind. Code § 1-1-5.5-23).

90. Defendants' deception occurred before July 1, 2021.

91. Plaintiff has been damaged by Defendants' deception.

92. The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

## COUNT THREE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff incorporates by reference the preceding paragraphs.

94. Defendants engaged in extreme and outrageous conduct.

95. Through their extreme and outrageous conduct, Defendants intentionally and recklessly caused severe emotional distress to Plaintiff.

11

96. Defendants had an intent to harm Plaintiff emotionally.

97. Defendants' conduct exceeds all bounds usually tolerated by a decent society.

98. Defendants' conduct had caused Plaintiff mental distress of a very serious kind.

99. Plaintiff has been damaged by Defendants' extreme and outrageous conduct.

## COUNT FOUR
## CRIME VICTIM'S RELIEF ACT – IDENTITY DECEPTION

100. Plaintiff incorporates by reference the preceding paragraphs.

101. Defendants knowingly and intentionally obtained, possessed, transferred, and used the identifying information of Plaintiff.

102. Defendants' obtaining, possession, transferring, and use of Plaintiff's identifying information was without Plaintiff's consent.

103. Defendants' obtaining, possession, transferring, and use of Plaintiff's identifying information was performed with intent to harm Plaintiff.

104. Defendants' obtaining, possession, transferring, and use of Plaintiff's identifying information was performed with intent to harm another person.

105. The fair market value of the harm caused by Defendants is at least $50,000.

106. Defendants' actions constitute identity deception, a Level 5 or 6 felony, under Ind. Code § 35-43-5-3.5.

107. Although Ind. Code § 35-43-5-3.5 was amended effective July 1, 2021, see 2021 Ind. HEA 1115 (LEXIS) § 46, the Indiana Legislature simultaneously provided that this amendment did not affect crimes committed before July 1, 2021. See id. § 1 (codified at Ind. Code § 1-1-5.5-23).

108. Defendants' identity deception occurred before July 1, 2021.

109. Plaintiff has been damaged by Defendants' identity deception.

110. The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

## COUNT FIVE
## CRIME VICTIM'S RELIEF ACT – THEFT

111. Plaintiff incorporates by reference the preceding paragraphs.

112. Plaintiff owns certain property, as defined in at least Ind. Code § 35-31.5-2-253 ("Subject Property"). As to Plaintiffs' name, image, likeness, and story, the Subject Property includes at least contract rights, intangible property rights, and licensing rights.

113. The Subject Property is a thing of value.

114. The Subject Property is personal property.

115. The Subject Property is an intangible.

116. The Subject Property might reasonably regarded as a gain or advantage by a beneficiary.

117. The Subject Property is a contract right.

118. Defendants knowingly and intentionally exerted unauthorized control over the Subject Property. This included obtaining, taking, selling, conveying, encumbering, possessing, securing, transferring, and extending a right.

119. Defendants' control was not authorized by Plaintiff.

120. Defendants' control was undertaken by creating and confirming a false impression in Plaintiff.

121. Defendants' control was taken with the intent to deprive Plaintiff of any part of the Subject Property's value or use.

122. The value of the property is at least $750.

13

123. The value of the property is at least $50,000.

124. Defendants' actions constitute theft, a Class A misdemeanor or a Level 5 or 6 felony, under Ind. Code § 35-43-4-2.

125. Plaintiff has been damaged by Defendants' theft.

126. The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendants and order as follows:

a. That the Court issue a permanent injunction requiring:

　　i. Defendants to refrain from using Plaintiff's name, image, or likeness to identify Plaintiff as a Secret Child.

　　ii. Defendants to remove Plaintiff's name, image, and likeness from the documentary.

　　iii. Defendants to remove Plaintiff's name, image, and likeness from their Internet websites and social media accounts.

b. That Plaintiff shall be entitled to recover compensatory damages in an amount to be determined at trial.

c. That Plaintiff shall be entitled to recover punitive damages.

d. That Plaintiff shall be entitled to recover up to three times her damages, her costs, her reasonable attorneys' fees, and other costs and expenses pursuant to Ind. Code § 34-24-3-1.

e. The Plaintiff shall be entitled to recover interest.

    f.   That Plaintiff shall be entitled to all other just and proper relief in the premises.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 21, 2022

/s/*Robert D. MacGill*
Robert D. MacGill (9989-49)
Matthew T. Ciulla (34542-71)
Scott E. Murray (26885-49)
**MACGILL PC**
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Scott.Murray@MacGillLaw.com

*Counsel for Plaintiff Jane Doe*