UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANE DOE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01281-TWP-MJD |
| | ) | |
| NETFLIX, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on Defendants' Motion to Compel Plaintiffs to Execute Releases to 23andme and Ancestry.com and/or to Stay Defendants' Time to Obtain Discovery until the Documents Are Produced. [Dkt. 101.] For the reasons set forth below, the motion is **GRANTED**.

This case arises out of a documentary film entitled "Our Father." The film, which was streamed on Netflix, tells the story of Dr. Donald Cline, a physician who fathered dozens of children by inseminating his fertility patients with his own semen without their knowledge. The Plaintiffs in this case are three of those children. Plaintiffs assert various claims against Defendants, all of which relate to the allegation that Defendants disclosed Plaintiffs' identities as children of Dr. Cline without Plaintiffs' consent in the film and via video clips posted on social media.

The Plaintiffs names appear in "Our Father" because they appeared on the 23andMe website as being related to one of the other children fathered by Dr. Cline, Jacoba Ballard. In other words, Ms. Ballard and each of the Plaintiffs submitted their DNA to 23andMe, which then

determined that they were genetically related to each other and reported that fact to each of them. In the film, apparently, screens from Ms. Ballard's 23andMe account that reveal the identities of some of her half siblings, including Plaintiffs, are shown. Plaintiffs apparently also submitted their DNA to another website, Ancestry.com, which provides the same type of service as 23andMe.

Defendants wish to obtain discovery from 23andMe and Ancestry.com ("the Platforms") regarding the following:

- the privacy settings Plaintiffs used on the Platforms over the years;
- the warnings Plaintiffs received from the Platforms about the ways their genetic information could be disclosed and used by others to whom that information is disclosed; and
- the ways in which Plaintiffs used these Platforms to discuss their genetic connections to Dr. Cline, including actual communications with the genetic connections they discovered and who discovered the Plaintiffs through the Platforms.

[Dkt. 101 at 3.] Plaintiffs do not dispute that this information is relevant to the claims and defenses in this case, and they have produced the responsive information that they possess. However, some of the information is not in their possession and must be obtained directly from the Platforms. Defendants therefore have asked Plaintiffs to execute releases to permit the Platforms to provide the responsive information to Defendants. Plaintiffs have refused, arguing that Defendants should be required to utilize third-party subpoenas pursuant to Federal Rule of Civil Procedure 45 to obtain the information.[1]

---

[1] Plaintiffs argue that Defendants "should not be permitted to abandon Rule 45 before they even try to use it." [Dkt. 103 at 2.] In their reply brief, Defendants state that "[o]n January 30, 2023[,] Defendants first provided notice to Plaintiffs pursuant to Local Rule 45-1 that they intended to attempt to serve the subpoenas, and Defendants have done so." [Dkt. 106 at 1 n.2.] The Court is unaware of when those subpoenas were served or whether Defendants have received any responses to them.

Plaintiffs' position with regard to the instant motion, while not frivolous, is utterly perplexing. The position is not frivolous because there is no binding precedent directly on point, and Plaintiffs have cited to several district court cases from other jurisdictions that provide some support for their position that they cannot be compelled to execute releases in response to a Rule 34 document request. However, as Plaintiffs acknowledge, "there is a nationwide division of authority on this issue," [Dkt. 103 at 3], and cases from this circuit consistently require the execution of releases in these circumstances. Because the end result is the same—Defendants will obtain the information they seek—and objecting to providing the releases can only serve to delay the ultimate resolution of this case, which would seem to be against the Plaintiffs' interests, the Court sees no reason why Plaintiffs have taken the position they have. And, indeed, other than citing to relevant, albeit non-binding, cases, Plaintiffs do not provide any reason why those cases should be viewed as more persuasive than the cases that support Defendants' position.

It should come as a surprise to no one that the Court will follow the clear weight of authority in this district and circuit and grant Defendants' motion. As the Court has previously held,

> Rule 34 governing requests for production provides the common sense limitation that a party may only be compelled to produce electronically stored information "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Notwithstanding the dictum in *Chaveriat v. William Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993), suggesting that having to ask someone else for a document means that the document is outside of a party's control, the Seventh Circuit has embraced the prevailing definition of "control" as "a legal right to obtain." *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014) (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004)). This standard is certainly broad enough to encompass a contractual right to obtain documents. *See, e.g., Symons Int'l Grp., Inc. v. Cont'l Cas. Co.*, No. 1:01-CV-00799-RLY, 2015 WL 4392933, at *9 (S.D. Ind. July 15, 2015) (requiring plaintiff to acquire financial documents from financial institutions pursuant to account agreements); *Engel v. Town of Roseland*, No. 3:06-CV-430 JTM, 2007

WL 2020171, at *2-3 (N.D. Ind. July 6, 2007) (same), *objections overruled in relevant part*, 2007 WL 2903196 (N.D. Ind. Oct. 1, 2007).

*Williams v. Angie's List, Inc.*, 2017 WL 1318419, at *2 (S.D. Ind. Apr. 10, 2017); *see also Johnson v. Rogers*, 2018 WL 2327713, at *3 (S.D. Ind. May 23, 2018) (same); *Daggett v. Wollangk*, 189 F. App'x 504, 505-06 (7th Cir. 2006) (affirming dismissal of case for plaintiff's refusal to comply with order requiring him to sign medical release); [Dkt. 101 at 7-8] (citing additional cases from this and other circuits).[2]

Defendants' motion to compel, [Dkt. 101], is **GRANTED**.  **Within 14 days of the date of this Order**, Plaintiffs shall execute the releases found at Docket Number 101-2 and provide them to Defendants.[3] The failure to comply with this Order may result in the dismissal of all claims to which the discovery sought from the Platforms is relevant.

SO ORDERED.

Dated:  24 FEB 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

---

[2] The Court further notes that Defendants' attempt to obtain signed releases is consistent with their obligation pursuant to Rule 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," as, obviously, having releases from Plaintiffs would reduce the burden to 23andMe and Ancestry.com in responding to the Defendants' subpoenas.

[3] Plaintiffs do not raise any objection to the content of the releases.