UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:22-cv-01281-TWP-MJD |
| ) | |
| NETFLIX, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION FOR RESOLUTION**

This matter is before the Court on Defendant RealHouse's Motion for *in Camera* Review and for Resolution of Unaddressed Privileged [sic] Issues Implicated by the Court's February 17 Order. [Dkt. 112.] The Court has considered the parties' briefs and the arguments presented at a hearing on the motion. For the reasons set forth below, the Defendant's request in the motion that certain documents or portions thereof be protected from disclosure to Plaintiffs is **DENIED**.

**I. Background**

This case arises out of a documentary film entitled "Our Father." The film, which was streamed on Netflix, tells the story of Dr. Donald Cline, a physician who fathered dozens of children by inseminating his fertility patients with his own semen without their knowledge. The Plaintiffs in this case are three of those "Secret Children." Plaintiffs assert various claims against Defendants, all of which relate to the allegation that Defendants disclosed Plaintiffs' identities as children of Dr. Cline without Plaintiffs' consent in the film and via video clips posted on social media.

## II. Discussion

On February 17, 2023, the Court entered its Order on Plaintiffs' motion to compel. *See* [Dkt. 104]. Plaintiffs organized their briefing of that motion into five "issues." In the instant motion, Defendant asks the Court to reexamine two of the issues, each of which is addressed, in turn, below.

### A. "Issue D" Documents

The "Issue D" Documents addressed in Plaintiffs' motion to compel consist of numerous spreadsheets that are referred to as "fair use logs," "release logs," "clearance logs," and various other terms. As Defendants[1] described them,

> [t]he logs are the mechanism through which RealHouse's outside "clearance counsel" provided legal advice to RealHouse and the independent filmmakers making "Our Father," regarding potential or actual legal issues raised by the film. Each line on the spreadsheet contains legal advice.

[Dkt. 89 at 14.] RealHouse's Rule 30(b)(6) deponent, Alexandra Reed, testified that "during the editing process, when we take our mass of footage and reduce it to 90 minutes, we keep an ongoing grid . . . [a]nd that grid is then shared at a certain editorial stage with our First Amendment attorney." [Dkt. 89-3 at 4.] She further testified that the grids, or clearance logs, "show[] a line for every edit in the film." *Id.* There is thus no question that, when they were created, the logs were protected by the attorney-client privilege; they were created as a mechanism to seek and receive legal advice. However, Plaintiffs argued in their motion to compel that Defendants would waive the privilege as to the logs if they chose to use testimony or evidence about their clearance process as part of their defense in this case.

---

[1] While the instant motion is brought only by Defendant RealHouse, Plaintiffs' motion to compel was directed at, and responded to by, all of the Defendants.

2

In addressing this argument, the Court agreed that "this 'is a classic sword and shield problem' that creates an implied waiver of the privilege." [Dkt. 104 at 10-11.]

> "An implied waiver occurs when (1) [t]he party asserting the privilege acts affirmatively (2) to place the privileged communications in issue between the party seeking discovery and itself (3) such that denying access to the communication becomes manifestly unfair to the party seeking discovery." *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 1366037, at *2 (N.D. Cal. Apr. 3, 2013) (citations and internal quotation marks omitted); *see also Waterfield v. Waterfield*, 61 N.E.3d 314, 326 (Ind. Ct. App. 2016) ("Indiana courts have previously held that evidentiary privileges created 'to shield selected information from discovery . . . may not be wielded as swords at the will of a party.' *Madden v. Ind. Dept. of Transp.*, 832 N.E.2d 1122, 1128 (Ind. Ct. App. 2005). In other words, 'a party may not place an issue before the trier of fact and then assert a privilege to prohibit the introduction of evidence regarding that issue.'" *Id.*).
>
> In this case, Defendants wish to inform the jury that they take care to avoid legal issues—such as revealing someone's identity without authorization—by having clearance counsel conduct a thorough review. If the results of that review as relevant to the issues in this case are not revealed to Plaintiffs, allowing Defendants to present such testimony "would result in unfairness to [Plaintiffs] to the extent it would leave the jury with the impression that [Defendants] relied on the advice of counsel." *Volterra Semiconductor Corp.*, 2013 WL 1366037, at *2. There are many possible scenarios that could call into question the care taken by Defendants. For example, perhaps clearance counsel expressly told Defendants to blur Plaintiffs' names and Defendants decided not to—or simply failed to do so. Or perhaps the scenes at issue in this case did not appear on the logs and therefore were never reviewed by counsel. Plaintiffs are entitled to examine the relevant portions of the logs to determine whether they provide evidence to refute the evidence that Defendants concede is intended to show the "care" that they took.

[Dkt. 104 at 11-12.] Accordingly, in an attempt to balance Defendants' interest in preserving the attorney-client privilege with the need to avoid manifest unfairness to Plaintiffs, the Court ordered Defendants to "either certify that they will not introduce any evidence regarding their clearance procedures in this case or produce all portions of the 'Issue D' documents that relate to any of the scenes, shots, or 'edits' of 'Our Father' that are at issue in this case." *Id.* at 12.

3

In the instant motion, Defendant reports that the logs contain no mention of the scenes at issue in this case—despite the above-quoted testimony that state that they contain "every edit" of the film—and it has produced the logs for *in camera* review to confirm that fact. In response to Plaintiffs' argument that Defendant should at least have to produce any portion of the logs that contain either (1) any Plaintiff's name or (2) any mention of the blurring (or non-blurring) of any Secret Child's name, Defendant stated unequivocally at the hearing that the logs do not contain either, and further represented that it will admit that fact in response to Plaintiffs' recently served requests for admission. Therefore, Defendant argues, it should not be required to produce any portions of the logs, even though it still intends to introduce evidence of its clearance process as part of its defense in this case.

The Court disagrees with Defendant's position. Defendant intends to defend against Plaintiffs' allegation that Defendant committed intentional torts by pointing to the procedures it had in place to protect against those types of incidents. By doing so, Defendant will be putting its procedures at issue.[2] Plaintiffs are thus entitled to discovery with regard to what those procedures were and how they were executed. Defendant concedes that those procedures were executed using the logs—that was the way in which Defendant sought and received the legal advice at the heart of its procedures. It would be manifestly unfair if Defendant could introduce

---

[2] Defendant insists that this is not a sword/shield issue because it will not be asserting that it followed its counsel's advice as to whether to reveal the Plaintiffs' identities, and therefore it has not put its counsel's advice at issue. Defendant's view is too narrow. Defendant will be asserting that the procedures that it had in place, and that it followed, were such that it did not intentionally or recklessly cause the injuries alleged by Plaintiffs in this case. Defendant therefore has placed the reasonableness of those procedures and Defendant's use of them with regard to "Our Father" at issue, and cannot use the attorney-client privilege as a shield to prevent Plaintiffs from testing the veracity of Defendant's assertions.

evidence regarding the robustness of its procedures, but Plaintiffs were not given access to the logs in order to determine whether the logs provide contrary evidence. Accordingly, Defendant's stated intention to introduce evidence regarding its clearance procedures has resulted in an implied waiver of the attorney-client privilege as to the clearance logs. Therefore, Defendants are directed to produce the "Issue D" documents in their entirety and unredacted on or before **April 6, 2023**.

### B. "Issue C" Documents

The "Issue C" documents consist of four documents that Defendant's privilege log indicated were withheld solely on work product grounds. The documents were provided to Defendant's insurance broker for the purpose of obtaining insurance covering "Our Father." Plaintiffs argued that any work product protection over these documents was waived when they were provided to the insurance broker. The Court ordered Defendants to produce these documents, finding that, given the fact that the Issue C documents were created months before "Our Father" began streaming, "it is difficult to see how the Issue C Documents could possibly be considered work product, and Defendants make no attempt to explain how they could be." [Dkt. 104 at 9.]

The Court also noted in its Order on the motion to compel that "both sides' arguments with regard to whether these and the other documents are entitled to work product protection are a jumble of unhelpful and unsupported assertions." [Dkt. 104 at 4.] It is not surprising, then, that Defendant attempts to clarify its position with regard to two of these documents[3] in the instant motion. One of the two documents is a clearance log like those discussed above; the

---

[3] The other two documents have already been produced to Plaintiffs.

5

other is a counsel opinion letter that was written for the purpose of obtaining insurance coverage and which contains counsel's mental impressions regarding various litigation risks related to the film.

With regard to the clearance log, it must be produced to Plaintiffs for the reasons discussed above.[4]  In addition, as to both documents, it became clear at the hearing that Defendant has no viable argument that, to the extent the attorney-client privilege originally applied to the documents, that privilege was not waived because the documents were provided to its insurance broker—with whom Defendant arguably shared a common interest—with the expectation that they would be forwarded to an insurance company, with whom there was no common interest.[5]

---

[4] The Court does not agree with Plaintiffs that Defendant's failure to assert the attorney-client privilege over this document on its privilege log waived that privilege.  While such a waiver certainly can occur, in this instance, given the description of the document in the log that clearly implicates the attorney-client privilege, *see* [Dkt. 83-1 at 65], the failure to assert it is akin to a scrivener's error that did not lead to waiver.  However, Defendant conceded at the hearing that the attorney-client privilege was waived when the document was provided to its insurance broker.

[5] Defense counsel stated at the hearing that he was not sure whether the documents were actually provided to the insurance company, but that he expected that they were.  As the proponent of the privilege, Defendant bore the burden of establishing that when the documents were provided to the insurance broker, they were provided with the expectation that they would **not** be provided to the insurance company or anyone else outside of the privilege.  *See United States v. BDO Seidman,* 337 F.3d 802, 811 (7th Cir. 2003) ("[A] party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements.").  And, in any event, as to the letter, defense counsel conceded at the hearing that it was written with the purpose of being used to obtain insurance, not with the purpose of providing legal advice.

Defendant does argue that both documents are protected by the work-product privilege.[6]

Defendant's argument is based entirely on the following passage from *Tyne v. Time Warner Ent. Co., L.P.*, 212 F.R.D. 596, 601 (M.D. Fla. 2002):

> Finally, even if the documents were not protected from discovery by the attorney-client privilege, they may be protected by the work product doctrine. While many of the documents are created and circulated with the purpose of avoiding litigation, some documents indicate that specific litigation had been overtly threatened. Many, if not all, of the documents are protected by the work product doctrine because they were developed in order to avoid, and eventually to defend against, threatened or anticipated litigation. The production companies accurately anticipate that they may be sued for misuse of certain material in their films. The legal department analyzes the legal risks of including such material in the film, and either obtains what it believes to be adequate clearance, or recommends that the studio not include the material in the film. The work product associated with this process is produced in anticipation of litigation, and is protected from discovery.

Putting aside the equivocation in *Tyne* that work product protection **may** apply, the suggestion that even those documents that were not created in response to the fact that "specific litigation had been overtly threatened," but rather were created simply because of a generalized awareness that "misuse of certain material" might lead to litigation, might be entitled to work product protection is simply not consistent with binding Seventh Circuit precedent. As the Court noted in the Order on the motion to compel,

> to be subject to work product immunity, the documents at issue must have been created in response to "a substantial and significant threat" of litigation, which can be shown by objective facts establishing an identifiable resolve to litigate. Documents are not work product simply because litigation is in the air, or there is a remote possibility of some future litigation.

---

[6] Defendant has already produced those portions of the letter that relate to publicity and privacy rights. Defense counsel conceded that if the letter is not protected work product, there would be no reason to withhold the remainder of the letter from production.

7

*City of Evanston v. N. Illinois Gas Co.*, 2017 WL 11558474, at *2 (N.D. Ill. Aug. 31, 2017) (internal citations and quotation marks omitted). This opinion reflects a principle that the Seventh Circuit has consistently recognized: "There is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, *likely* to lead to litigation, [has] arisen.' Only documents prepared in the latter circumstances receive work-product protection." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (emphasis in original) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1120 (7th Cir. 1983)). "[W]hether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared for or obtained *because of* the prospect of litigation" is only the "threshold question when determining whether a document was prepared in anticipation of litigation." *City of Evanston*, 2017 WL 11558474, at *2.

> In addition, to be subject to work product immunity, the documents at issue must have been created in response to "a substantial and significant threat" of litigation, which can be shown by "'objective facts establishing an identifiable resolve to litigate.'" *Allendale*, 145 F.R.D. at 87 (citation omitted). Documents are not work product simply because "litigation [is] in the air," *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *5 (N.D. Ill. Aug. 12, 1999), or "there is a remote possibility of some future litigation."*McCook Metals LLC v. Alcoa*, 192 F.R.D. at 259.

*Id. Tyne*—if read as urged by Defendant—ignores this second requirement. As there is simply no question that this requirement is not satisfied in this case—there was no threat of litigation when the documents were created, other than the general possibility of future litigation because documentary films sometimes lead to litigation—the documents **are not** work product. Accordingly, the unredacted letter and the clearance log must be produced. Defendants are

directed to produce the remaining "Issue C" documents in their entirety and unredacted on or before **April 6, 2023**.

### III.  Conclusion

For the reasons set forth above, Defendant RealHouse's Motion for *in Camera* Review and for Resolution of Unaddressed Privileged [sic] Issues Implicated by the Court's February 17 Order, [Dkt. 112], is **DENIED**.  RealHouse shall produce the remainder of the "Issue C" documents and the "Issue D" documents **by April 6, 2023**.

SO ORDERED.

Dated:  30 MAR 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.