## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE,<br>JANET ROE,<br>JANICE COE,<br><br>Plaintiffs, [1]<br><br>v.<br><br>NETFLIX, INC.,<br>NETFLIX WORLDWIDE ENTERTAINMENT,<br>LLC,<br>REALHOUSE PRODUCTIONS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:22-cv-01281-TWP-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is before the Court on a Motion for Judgment on the Pleadings filed pursuant

to Federal Rule of Civil Procedure 12(c) by Defendants Netflix, Inc., Netflix Worldwide

Entertainment, LLC, and RealHouse Productions, LLC[2] (collectively, "Defendants") (Filing No.

61). The Plaintiffs Jane Doe, Janet Roe, and Janice Coe (collectively, "Plaintiffs") brought this

action against the Defendants alleging they committed various torts by disclosing Plaintiffs'

identities to millions of people on social media and on Defendants' streaming platform in a

---

[1] The Plaintiffs, proceeding anonymously, initially filed three separate state court actions against the Defendants. *See* Cause No. 49D01-2205-PL-017068; Cause No. 49D11-2205-PL-017080; Cause No. 32D04-2206-PL-000073. All three state court actions were filed by the same law firm. After being removed to this Court by the Defendants, the three cases were consolidated under the above caption but only through summary judgment proceedings (Filing No. 27).

[2] The Court notes that Plaintiffs identified "Blumhouse Productions, LLC" as a defendant in the state court cases but "RealHouse Productions, LLC" is instead named as a defendant in this federal action. Considering that neither party raised this discrepancy with the Court, it assumes, until advised otherwise, that "RealHouse Productions, LLC" is the intended and proper party before this Court to adjudicate Plaintiffs' claims. As Defendants note: "'Our Father' was produced by independent filmmakers pursuant to contracts with defendant RealHouse Productions, LLC…[whereafter] Defendant Netflix Worldwide Entertainment, LLC…acquired rights to the documentary from RealHouse and released the documentary on Netflix's subscription streaming service on May 11, 2022." (Filing No. 62 at 13.) The Defendants assume the independent filmmaker's agency for purposes of this Motion. *Id.* at n. 3.

documentary ("Our Father") without their consent[3] ([Filing No. 1-1](#); [Filing No. 77-1](#); [Filing No. 77-2](#)). Defendants argue Plaintiffs' claims fail as a matter of law because, among other things, they contravene the First Amendment to the United States Constitution and Article 1, § 9 of the Indiana Constitution ([Filing No. 62](#)). For the reasons stated below, the Court **grants in part and denies in part** Defendants' Motion for Judgment on the Pleadings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

### A. Donald Cline's Fertility Fraud

Individuals hoping to one day have children, but who for whatever reasons could not naturally conceive them, entrusted fertility specialist Dr. Donald Cline with that task. ([Filing No. 1-1 at ¶ 22](#)). Unbeknown to anyone, Dr. Cline inseminated many of his female patients with his own semen, ultimately, fathering approximately ninety-four (94) children (the "Secret Children"). *Id*. at ¶ 24. Dr. Cline's secret was not discovered until 2015 after some took at-home DNA tests through an online testing[4] service. *Id*. at ¶ 25. It was not until 2019 that the Plaintiffs made the same discovery after submitting their DNA samples to another online testing service. *Id*. at ¶¶ 28-30. The Plaintiffs held this information in close confidence. *Id*. at ¶ 32. Only, "[c]ertain of Plaintiff's biological half siblings were able to see [their] identit[ies] through the DNA website[s].

---

[3] The Court notes little difference between the Plaintiffs' state court complaints. For convenience, this Order cites to Jane Doe's Complaint ([Filing No. 1-1](#)).

[4] The Secret Children submitted their DNA samples, without significance, to two online testing services: (1) Ancestry.com and (2) 23andMe. *Id*. at ¶ 25.

This information was kept secured to a limited number of persons, namely, certain of the biological half siblings, through passwords and other means." *Id*. at ¶ 33.

**B.      The "Our Father" Documentary**

Some of the Secret Children were rightly eager for answers and wanted to expose Dr. Cline's fraud. *Id*. at ¶ 35.  They reported him to local news outlets, government agencies[5], and the like (Filing No. 62 at 12). Local news outlets investigated and reported[6] on the story. *Id*. Thereafter, national news outlets reported on Dr. Cline's fertility fraud.  *Id*.  This created a media frenzy surrounding Dr. Cline's conduct.  *Id*.  In 2020, the Defendants contacted some of the Secret Children, including Jacoba Ballard ("Ballard").  Defendants offered them "the opportunity to discuss being on camera for [a] documentary and to submit photos." (Filing No. 1-1. at ¶¶ 34, 36.)

However, some of the Secret Children, including the Plaintiffs, expressed concerns with being included in the documentary. *Id*. at ¶ 36. The "Defendants made clear to the [] Secret Children that no Secret Child would be identified in the documentary without his or her explicit consent." *Id*. at ¶ 36.  In April 2021, the Defendants sent a written statement to Doe and Roe, which read in part: "I know that some of you were more comfortable than others being involved…. You will not be identified (unless you've already given us explicit permission to do so…." (the 'Non-Identification Pledge')."  *Id*. at ¶ 37.

---

[5] *See* Elisha Fieldstadt, *Indiana Fertility Doc Who Allegedly Used Own Sperm Faces Felony Obstruction Charges*, NBC News (Sept. 12, 2016), https://www.nbcnews.com/news/us-news/indiana-fertility-doctor-faces-felony-charges allegedlyusing-own-sperm-n646876; *see also Ballard & Pierce v. Anonymous Health Care Provider & John Doe*, M.D., Case No. 49D03-1610-CT-035485 (Marion Cty. Sup. Ct. Oct. 5, 2016).

[6] *See* Angela Ganote, *A Need to Know: DNA reveals a 30-year-old family secret*, Fox 59, (May 12, 2015), https://fox59.com/news/a-need-to-know-dna-reveals-a-thirty-year-old-family-secret/.

The three Plaintiffs communicated to Defendants that they did not have their permission to disclose their names in the documentary (Filing No. 1-1 at ¶ 38; Filing No. 77-1 at ¶ 42; Filing No. 77-2 at ¶ 37.)

Approximately a year later, in April 2022, the Defendants shared a trailer of the documentary to millions on their social media accounts. (Filing No. 1-1 at ¶¶ 51, 62-67.) The social media posts embedded links to segments of the documentary. *Id*. The Plaintiffs' names were displayed, and they were identified as Secret Children. *Id*. at ¶¶ 61-67. In May 2022, millions of people, including at least 250,000 Indiana residents were able to view "Our Father" on Netflix's streaming platform. *Id*. at ¶¶ 16, 40-49, 52, 53, 57. The documentary depicts Ballard uncovering the truth of her biological parentage, the identities of her previously unknown siblings, the extent of Dr. Cline's fertility fraud, and Dr. Cline's subsequent conviction (Filing No. 62 at 23). At one point during "Our Father", Ballard is seen[7] reviewing her DNA results and scrolling through the names of her half-siblings. *Id*. It is at this moment that the Plaintiffs' names appear on the screen: "Coe's name appeared on screen for less than 1 second … and Doe's and Roe's names appeared on screen for approximately 9 seconds…." *Id*. at 33.

## C.   The Plaintiffs' Lawsuits

The Plaintiffs were astonished that the Defendants broke its pledge (Filing No. 1-1) and even more perplexed because the Defendants blurred the "names and photographs of numerous Secret Children in the documentary." *Id*. at ¶ 55. Plaintiffs were offended by the false and misleading written statement—The Non-Identification Pledge—communicated to them by Defendants and disclosure of their names in Our Father. *Id*. at ¶¶ 11-16. The Plaintiffs then filed

---

[7] Defendants provided a digital copy of the original documentary (Filing No. 63; Filing No. 67). "The documentary was modified soon thereafter to blur and obscure the names of the plaintiffs in accordance with their demands." (Filing No. 62 at n. 1.)

their respective state court actions alleging the following claims against the Defendants: (Count 1) Public Disclosure of Private Facts; (Count 2) Deception, a class A misdemeanor under the Crime Victim's Relief Act ("CVRA"), Ind. Code § 35-43-5-3 as *repealed by* P.L.174-2021, SEC.45, eff. July 1, 2021; (Count 3) Intentional Infliction of Emotional Distress ("IIED"); (Count 4) Identity Deception, a Level 5 or 6 felony, under the CVRA, Ind. Code § 35-43-5-3.5 *as amended* by P.L.174-2021, SEC.46, eff. July 1, 2021; and (Count 5) theft, a Class A misdemeanor or a Level 5 or 6 felony, under the CVRA, Ind. Code § 35-43-4-2. *Id.*

Soon after, the Defendants appeared in the state court cases and, on June 27, 2023, all three cases were removed to this Court ([Filing No. 1-1]; [Filing No. 77-1]; [Filing No. 77-2]). The three cases were then consolidated ([Filing No. 27]); thereafter, the Defendants filed the pending Motion. ([Filing No. 61]).

## II.    JUDGMENT ON THE PLEADINGS STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed.  Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id*.  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted).  To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged*." Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993)). Although the factual allegations in the complaint are viewed in a light most favorable to the non-moving party; the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## III.   <u>DISCUSSION</u>

The Plaintiffs initiated this action alleging the unauthorized publication of their private facts and appropriation of their names and images constitutes (Count 1) public disclosure of private facts, (Count 2) deception, (Count 3) IIED, (Count 4) identity deception, and (Count 5) theft. Defendants argue that Plaintiffs' claims are barred by the First Amendment and Article I, Section 9 of Indiana Constitution because the disclosed information is a matter of legitimate public concern. Alternatively, Plaintiffs' privacy claims must fail because Plaintiffs' identities were not privately held but rather voluntarily disclosed on a public website. Further, Plaintiffs' deception and identity deception claims are barred by the repeal and amendment of those statutes. Moreover, Plaintiffs have not alleged sufficient facts to prove their IIED and theft claims. The Plaintiffs contend that their claims do not conflict with the First Amendment or Section 9. Also, their

identities were disclosed to a specific and authorized group and, as such, were privately held.  Their CVRA claims are unaffected by the statutes' repeal and amendment, and all other arguments on these issues are meritless.  The Court will first address the Defendants' motion to strike certain exhibits, and then address the parties' arguments in turn.

### A.   <u>Motion to Strike</u>

Imbedded in the Defendants' Reply is a motion to strike certain exhibits (Filing No. 77; Filing No. 78) filed by Plaintiffs in support of the pending Motion (Filing No. 86 at 6-7). Specifically, Defendants ask the Court to strike exhibits of "documents produced in discovery and deposition testimony" because those documents are outside the pleadings.  *Id*.  Defendants correctly note that on a motion for judgment on the pleadings, if the court does not exclude matters outside the pleadings from its consideration, it should convert the Rule 12(c) motion into a Rule 56 motion for summary judgment.  Fed.R.Civ.P. 12(c); *see Church v. General Motors Corp.*, 74 F.3d 795, 798 (7th Cir.1996). The Court agrees that the information, which is not part of the pleadings, is clearly outside the scope of Rule 12(c).  More importantly, the Court does not rely on those documents in reaching its decision.  Therefore, they are stricken, except for copies of Plaintiffs' state court complaints (Filing No. 77-1; Filing No. 77-2).

### B.   <u>Count 1: Invasion of Privacy</u>

In Indiana, an 'invasion of privacy' encompasses four distinct injuries: "(1) intrusion upon seclusion; (2) appropriation of likeness; (3) public disclosure of private facts; and (4) false-light publicity." *See Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 380 (Ind. 2022). Count I of Plaintiffs' Complaints falls into the third category—public disclosure of private facts.  This tort covers a unique harm: injuries resulting from the unauthorized disclosure of fundamentally private, yet fully true, information.  Restatement (Second) of Torts § 652D (1977).  This category

is concerned with "the propriety of stripping away the veil of privacy with which we cover the embarrassing, the shameful, the tabooed, truths about us." *McKenzie*, 185 N.E.3d. at 380 (quoting *Haynes v. Alfred A. Knopf*, Inc., 8 F.3d 1222, 1230 (7th Cir. 1993)).

In 2022, the Indiana Supreme Court, in *McKenzie*, dispelled over two decades of judicial uncertainty and confirmed the "viability of a tort claim for invasion of privacy based on public disclosure of private facts." *Id*. at 382. A defendant violates this privacy law when they disclose information: (1) that is private in nature; (2) to the public; (3) that would be highly offensive to a reasonable person; and (4) that is not of legitimate public concern. *Id*. Here, the Defendants do not contest that the disclosure was made to the public[8] nor that the disclosure would not be highly offensive[9] to a reasonable person. They do however argue that Plaintiffs' privacy claim fails because the disclosed information was not private in nature and was of legitimate public concern.

The Court disagrees with the Defendants on both points and finds that Plaintiffs have alleged a viable disclosure of private facts claim against the Defendants.

1.   **The Private Fact Element**

Defendants argue the Plaintiffs' identities were not privately held because it was voluntarily shared on the online testing services' websites with complete strangers, *i.e.*, namely the other Secret Children (Filing No. 86 at 12-13.) Plaintiffs argue their identities were privately held because it was shared with a select and authorized group of people (Filing No. 79).

---

[8] Disclosures made by a mass media entity generally satisfy the "publicity" threshold. *See* Restatement (Second) of Torts § 625D, cmt. (a) (noting that disclosures made by media platforms presumptively give publicity considering their audience is generally the public at large).

[9] The rule stated in this section gives protection only against unreasonable publicity, of a kind *highly offensive to the ordinary reasonable man*. *Id*. at cmt. (c) (emphasis added). "The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens." *Id*. While courts may inquire into the accepted customs and the social mores of the Plaintiffs' community, courts tend to defer to the jury, as factfinder, to make the final determination. *Id*.

The information disclosed must be both factually true and privately held.  *McKenzie*, 185 N.E.3d at 382.  If the information is left "open to public inspection or if the defendant merely gives further publicity to information about the plaintiff that is already public, this element is not satisfied."  *Id*. (citing Restatement (Second) of Torts § 625D cmt. (b)).  Some courts are willing to offer protection in the event the plaintiff created a clear and identifiable "zone of privacy."  *See* Abby DeMare, Note, *The Disclosure Tort in Indiana: How a Contemporary Twist Could Revive a Dormant Remedy*, 54 Ind. L. Rev. 661, 670 n. 58 (2021) (citing *Multimedia WMAZ, Inc. v. Kubach*, 212 Ga. App. 707, 443 S.E.2d 491 (1994)).

In *Kubach*, the plaintiff agreed to appear on a television broadcast to discuss his Acquired Immune Deficiency Syndrome ("AIDS") diagnosis on the condition that his identity be protected by rendering his face unrecognizable.  443 S.E.2d at 493. The defendant, however, failed to obscure the plaintiff's face, ultimately disclosing his identity and diagnosis. *Id*. The defendants argued that plaintiff's AIDs diagnosis was not privately held because the plaintiff had already shared his AIDS diagnosis with approximately sixty (60) other people.  *Id*. at n. 1.  There, the court recognized that the right of privacy may be waived on behalf of one class and retained as against another class.  *Id*. at 494.  The court found that the fact the defendant disclosed his AIDS diagnosis to "his family, friends, and support group did not, as a matter of law, means he waived his privacy right to permit public disclosure to all classes of individuals."  *Id*. (noting that this number is relatively small in relation to the television viewing public in the Macon area.").

Here, the Court finds *Kubach* persuasive on this point.  Plaintiffs allege their identities were "kept secured to a limited number of persons, namely, certain of the biological half siblings, through passwords and other means." (Filing No. 1-1 at ¶ 33.)  Although the other Secret Children had access to Plaintiffs' identities and the 23andMe Privacy Policy advised Plaintiffs that "third

parties may use your Personal Information differently than we do under," the Plaintiffs must enjoy the right to define the boundaries of their private lives.  Like *Kubach*, Plaintiffs' identities were disclosed to a specific group of people, namely individuals sharing Plaintiffs' ancestry, but unlike *Kubach*, Plaintiffs' identities were kept under password production.  *Id*.  Like *Kubach*, Plaintiffs' identities and status as Secret Children were known to a relatively small group of people.  *Id*.  The Court is satisfied that the disclosure in question was made to a specific and authorized audience, namely the other Secret Children.

Plaintiffs allege in their Complaint that the Defendants were aware of the private and sensitive nature of disclosing their names in Our Father, and for that reason they sought permission to do so before, ultimately, releasing the documentary with Plaintiffs' identities.  *Id*. at ¶ 36.  If the Plaintiffs' identities were known to the public, there would be no need to seek their permission to disclose it in the documentary.  *Id*. at ¶ 37.  Defendants' disclosure was dissimilar in degree and context when compared to the Plaintiffs' disclosure of their identities to potential family members.  *See Kubach*, 443 S.E.2d at 491 (noting that the defendant's disclosure "went far beyond the scope of any prior disclosure by plaintiff...").  Therefore, the private fact element is plausible on its face.

## 2.    The Newsworthiness Element

Defendants contend that the First Amendment to the United States Constitution and Article I, Section 9 of the Indiana Constitution protect the documentary and social media posts ([Filing No. 62 at 14-15](), 18.)  Alternatively, disclosing Plaintiffs' identities was of legitimate public concern.  *Id*. at 17-23.

The fundamental function of the newsworthy element is to ensure that a defendant's First Amendment rights are properly weighed against the plaintiff's privacy interests. The First Amendment affords a privilege which protects disclosure of private facts that are "newsworthy,"

that is, of legitimate concern to the public.  *See, e. g.*, *Time, Inc. v. Hill*, 385 U.S. 374, 388-89, 87 S.Ct. 534, 542-43, 17 L.Ed.2d 456 (1967); *Gilbert v. Medical Economics Co.*, 665 F.2d 305, 307 (10th Cir. 1981); *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980); *Virgil v. Time, Inc.*, 527 F.2d 1122, 1129 (9th Cir. 1975), *cert. denied*, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976).  Although Section 9 of the Indiana Constitution "affords even greater constitutional protection than under the First Amendment," it, like the First Amendment, requires that the disclosed information be of legitimate public concern to be shielded from liability (Filing No. 86 at 8, n. 3).  *See Fazekas v. Crain Consumer Grp. Div. of Crain Commc'ns, Inc.*, 583 F. Supp. 110, 114 (S.D. Ind. 1984) ("The law in Indiana is clear that if a publication concerns a matter of general or public interest, it is privileged.").

"Once a matter is found to be within the sphere of public interest, otherwise private facts about a person may also be considered of legitimate public interest if those particular facts are sufficiently related to the matter that is of legitimate public concern."  *Nobles v. Cartwright*, 659 N.E.2d 1064, 1075 (Ind. Ct. App. 1995) (citing Restatement (Second) of Torts § 652D, cmts. (f), (h)).  This applies "even when the information relates to a person who has neither sought nor consented to the publicity, but nevertheless has become a person about whom there is public interest because of his or her involvement in an occurrence or event that is of legitimate public concern."  *Id*. at 1076.  Generally, the disclosed information must be closely related to a matter that was "newsworthy" at the time of the disclosure.  *Id*.  If the appropriate nexus exists between the information and an already newsworthy story, "the fact is also of legitimate public interest, no matter how sensitive or how private."  *Id*. at 1077.  The *McKenzi* court explained that "[w]hen determining what is a matter of legitimate public concern, "account must be taken of the customs and conventions of the community."  185 N.E.3d at 382.  Ultimately, the proper inquiry is whether

11

"a reasonable member of the public…would say that he had no concern" with the information disclosed." *Id*.

Here, it is plausible that disclosing Plaintiffs' identities was not closely related to Dr. Cline's fertility fraud. Arguably, the Plaintiffs were asked to reveal their identities in Our Father because the underlying story about Dr. Cline's widespread fertility fraud was newsworthy. The newsworthy story was the general topic of fertility fraud. The Plaintiffs' identities were not, however, substantially relevant and directly related to the newsworthy story, nor a matter of public record, but, instead, were purely private matters. Arguably, the only substantially relevant and directly related information was the extent of Dr. Cline's fertility fraud, *i.e.*, specifically, how many women were unknowingly inseminated with Dr. Cline's semen and the resulting number of Secret Children he fathered. While Plaintiffs' status as Secret Children may have been closely related to the general topic of fertility fraud, their names were not.

None of the cases relied upon by the Defendants have precedential value and, in any event, they are all distinguishable. *See Anonsen v. Donahue*, 857 S.W.2d 700 (Tex. Ct. App. 1993); *Bonome v. Kaysen*, No. 03-2767, 2004 Mass. Super. LEXIS 172 (Mass. Super. Mar. 3, 2004). In *Anonsen*, the defendant indirectly revealed the identities of her husband and daughter when discussing pregnancies resulting from incest or rape, while in *Bonome* the defendant indirectly revealed the identity of her boyfriend when discussing her troubles with vaginal pain and its effects on her relationship in her memoir. *Id*. Plaintiffs allege the Defendants disclosed a private fact to the public at large which has caused them humiliation and embarrassment, and the disclosure was not of legitimate public concern (Filing No. 1-1 at 15). While the Court recognizes that an individual is free to share their personal story and history, it must not be at someone else's expense, especially when the disclosed information is not of legitimate public concern.

This disclosure tort serves as a valuable source of deterrence and accountability for our ever-increasing population and the growing technological opportunities for invasion into others' lives, the compilation of private data, and the disclosure of purely personal matters. Having weighed the parties' interests, Plaintiffs' claims are not barred by either the First Amendment or Section 9. Viewing the allegations in Plaintiffs' Complaints in the light most favorable to the Plaintiffs, their claim for disclosure of private facts is plausible on its face.

**3.**   **Incidental Use Doctrine**

Next, Defendants contend that the incidental use of Plaintiffs' names is not sufficient to allow Plaintiffs' publicity claims (Filing No. 62 at 32-33). Defendants point to several cases, including *Bogie v. Rosenberg*, where the Seventh Circuit interpreted Wisconsin's right of publicity statute and held that the use of the plaintiff's image was "*de minimus*" and thus fell within the incidental-use exception under Wisconsin law. 705 F.3d 603, 615–16 (7th Cir. 2013). Here, however, Plaintiffs are not moving under Indiana's right of publicity statute, Ind. Code § 32-36-1-8(a), and even if they were, Defendants have failed to cite any Indiana Supreme Court caselaw to support its position that a right of publicity claim could be defeated by the incidental use doctrine. Most importantly, Defendants have not cited any Indiana caselaw to support its position that Plaintiffs' disclosure of private facts claim could be defeated by the incidental use doctrine.

Federal courts interpreting state law must proceed cautiously in the absence of state supreme court guidance, for "federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, 587 F. Supp. 3d 744, 749 (N.D. Ind. 2022) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)). Because Defendants have failed to show that Indiana law currently recognizes the incidental use exception

13

to Plaintiffs' common law invasion of privacy claim, the Court declines to apply it here. At this stage of the proceeding, judgment as a matter of law is not appropriate as to Count I.

**C.**   **Count III—Intentional Infliction of Emotional Distress**

The Defendants argue Plaintiffs' IIED claim should be dismissed because it is duplicative of their privacy claim and, in any event, Plaintiffs' Complaints fail to allege facts sufficient to show that Defendants' conduct was "extreme and outrageous" (Filing No. 62 at 37-38).

The Defendants rely on *Doe v. Methodist Hosp.*, to argue that Plaintiffs' IIED claim should be dismissed because it is duplicative of the disclosure of private fact claim (Filing No. 62 at 37). 690 N.E.2d 681, 691 (Ind. 1997), *abrogated on other grounds by McKenzie*, 185 N.E.3d at 380. The Court declines to apply this principle here as *Doe* is a plurality opinion and Defendants have not provided this Court with any Indiana caselaw to support such a principle.

Concerning sufficiency of the facts, under Section 652D of the Restatement, a plaintiff need only show that the disclosed matter was private and not of legitimate concern to the public, and that the disclosure would be highly offensive to a reasonable person.  An IIED claim requires that the plaintiff also prove the mental element of the offense. The intentional infliction of emotional distress occurs "not only where an actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain, to result from his conduct."  *Chivers v. Central Noble Comm. Schools*, 423 F.Supp.2d 835, 857 (N.D. Ind. 2006); *see also Arizanovska v. Wal–Mart Stores, Inc.*, No. 1:09–cv–1404, 2011 WL 4402561, at *7 (S.D. Ind. Sept. 22, 2011) (same); *Bradley v. Hall*, 720 N.E.2d 747, 752 n. 6 (Ind. Ct. App. 1999).

Here, the Defendants only raised arguments regarding the extreme and outrageous element. Accordingly, the Court assumes that the intent, causation and the severity of Plaintiffs' emotional distress exist (Filing No. 62 at 37-38). *See United States v. Berkowitz*, 927 F.2d 1376 (7th Cir.

1991) (holding that perfunctory and underdeveloped arguments are waived).  However, Plaintiffs

have also pleaded the other elements of a viable IIED claim that through Defendants' "extreme and

outrageous conduct, Defendants intentionally and recklessly caused severe emotional distress to

Plaintiff."  (Filing No. 1-1 at ¶¶ 93-99.)

The Plaintiffs' allegations are sufficient to state a plausible IIED claim in a notice pleading

regime.  All of Plaintiffs' allegations of invasion of privacy are incorporated into the IIED claim.

*Id*. at ¶¶ 93-99.  Plaintiffs allege "Defendants, through Producer Michael Petrella, wrote to Plaintiff

and other Secret Children: "I know that some of you were more comfortable than others being

involved…. You will not be identified (unless you've already given us explicit permission to do

so…. (the "Non-Identification Pledge")."  (Filing No. 1-1 at ¶ 37.)  The Complaints allege that

without their consent, the Defendants "inserted far-flung, offensive, outrageous, and

uncorroborated blasphemous depictions and conspiracy theories into the film—while publicly

identifying Doe, Roe, and Coe as children literally born out of these theories." (Filing No. 79 at

30.)  Further, "Defendants alleged to the world that Plaintiffs are the children of a white supremist

cult member, identifying them by name." *Id*. And, Defendants blurred the "names and photographs

of numerous Secret Children in the documentary."  *Id*. at 4.

Plaintiffs' allegation—that Defendants pledged to not disclose their identities but to later

disclose it in the manner it did—perhaps suggests that Defendants are dishonest and acted with

selfish economic motivation.  It also permits a plausible inference that Defendants' intention was

to harm Plaintiffs emotionally.  While Defendants' assertion may be true that "[n]o reasonable

person could view the documentary and conclude that the siblings – whose relationship to Dr.

Cline was established without consent from their parents – are somehow associated with his

misconduct," the Court cannot at this stage find that Defendants' conduct, in connection with its

disclosure of Plaintiffs' identities, was not extreme and outrageous (Filing No. 85 at 17).  At this stage of the proceedings, the Court finds that the Plaintiffs' allegations are legally sufficient to state a claim for IIED against the Defendants.

**D.**     **Counts II, IV and V:  Crime Victim's Relief Act Claims**

Plaintiffs allege three causes of actions under the CVRA: (1) Deception pursuant to Ind. Code § 35-43-5-3 as *repealed by* P.L.174-2021, SEC.45, eff. July 1, 2021; (2) Identity Deception pursuant to Ind. Code § 35-43-5-3.5 *as amended* by P.L.174-2021, SEC.46, eff. July 1, 2021; and (3) theft pursuant to Ind. Code § 35-43-4-2 (Filing No. 1-1 at 11-15).  The Defendants argue the recent repeal of the deception statute and amendment to the identity deception statute is fatal to Plaintiffs' first two claims.  Further, Plaintiffs have not alleged sufficient facts to prove criminal conversion.

In general, a cause of action accrues—and the limitations period begins to run—when the plaintiff knew or should have known of the legal injury.  *Robertson v. State*, 141 N.E.3d 1224, 1227 (Ind. 2020).  It is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred.  *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 843 (Ind. 1992)).  Claims pursuant to the CVRA are governed by the discovery rule "as there is no legislative intent to the contrary and case law is clear that the two-year limitations period applies to these claims."  *Robertson*, 141 N.E.3d at 1226.

Under the CVRA, if a person "suffers a pecuniary loss as a result of a violation [of specified criminal statutes], the person may bring a civil action against the person who caused the loss" to recover an amount not to exceed three times the actual damages of the person suffering the loss, the costs of the action, and a reasonable attorney's fee." *E.g Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999) (citing Ind. Code § 34–24–3–1). The victim must prove by a

preponderance of the evidence all elements of the alleged crime, including the requisite criminal intent. *Gordon v. Bank of New York Mellon Corp.*, 964 F. Supp. 2d 937, 943 (N.D. Ind. 2013). Of course, at the pleading stage, the Plaintiffs need not prove the claims, but they must allege sufficient facts to make it plausible that Defendants' conduct satisfied each element of each offense. *Id*. (nothing that "[e]ven if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible."). But allegations of intent and a defendants' state of mind (which are unsurprisingly often incapable of being factually alleged by a plaintiff prior to discovery), may be alleged generally. Fed. R. Civ. P. 9(b).

## 1.   Count II: Deception

Defendants contend, among other things, that Plaintiffs cannot proceed under the deception statute because its repeal is fatal to their deception claim (Filing No. 62; Filing No. 86 at 21-22). Plaintiffs contend that when the deception statute was repealed, the Indiana Legislature also enacted a savings clause that safeguards its deception claim (Filing No. 62).

The deception statute was repealed, effective July 1, 2021.[10] Before the statute was repealed, a party could bring a civil claim for criminal deception by alleging the defendant "knowingly or intentionally ma[de] a false or misleading statement with intent to obtain

---

[10] The General Assembly, in enacting the new criminal code, also enacted a savings clause that provides that: "Sec. 23 (a) A section of IC 35-43-5, as amended and enacted during the 2021 regular session of the Indiana general assembly, does not affect:
  (a) Penalties incurred;
  (b) Crimes committed; or
  (c) Proceedings begun; Before the effective date of that section of IC 35-43-5. Those penalties, crimes and proceedings continue and shall be imposed and enforced under prior law as if that section of IC 35-43-5 had not been amended or enacted."
2021 Ind. ALS 174 , 2021 Ind. Acts 174 , 2021 Ind. PL 174 , 2021 Ind. HEA 1115.

property...." *NextGear Capital, Inc. v. Premier Group Autos LLC*, 2022 WL 1566808, at *5 (S.D. Ind. May 18, 2022) (citing Ind. Code § 35-43-5-3 as *repealed by* P.L.174-2021, SEC.45, eff. July 1, 2021). This crime was classified as a class A misdemeanor. *Id*.

Under Indiana law, "property" is defined quite broadly, to include "anything of value, including: (1) a gain or advantage or anything that might reasonably be regarded as such by the beneficiary; (2) real property, personal property, money, labor, and services; (3) intangibles; … (10) contract rights, choses-in-action, and other interests in or claims to wealth; … (15) data." Ind. Code § 35-31.5-2-253; *see also* Ind. Code § 35- 31.5-1-1 ("[T]he definitions in this article apply throughout this title."). Under Indiana law, "knowingly" is defined as follows: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code. § 35-41-2-2(b); *see also Marksberry v. State*, 185 N.E.3d 437, 442 (Ind. Ct. App. 2022).

Here, Plaintiffs argue that "the filming of Plaintiffs' names (and, thus, the Defendants' obtaining, possessing, use, and exercise of control over Plaintiffs' identifying information) occurred before July 1, 2021." (Filing No. 79 at 31.) "However, more discovery is needed, and Plaintiffs have served interrogatories and discovery requests to secure the true date." *Id*. Arguably Plaintiffs' deception claim did not accrue until they suffered pecuniary loss, *i.e.*, when Our Father was released. However, the alleged criminal deception occurred prior to the repeal of the statute because the Defendants made the purported false or misleading statements, *i.e.*, the pledge to Plaintiffs, in April 2021.

Defendants also argue that Plaintiffs "do not allege that Defendants intended to obtain anything from them, through a writing or otherwise." (Filing No. 86 at 84-88). But Plaintiffs allege that their "identity, name, image, likeness, and story," is the purported property that was to be

obtained through their participation in Our Father. As such, the Court is satisfied that the Plaintiffs have plead sufficient facts to allege a plausible deception claim, and to survive the initial hurdle of dismissal on the pleadings. (Filing No. 79 at 32-33). Whether or not it can survive summary judgment is a matter for another day.

    2.    **Count IV:  Identity Deception**

Defendants also contend that the amendment to the identity deception statute is fatal to Plaintiffs' identity deception claim (Filing No. 62 at 33-37; Filing No. 86 at 21-22).

Absent explicit language to the contrary, statutes generally do not apply retroactively. *E.g.*, *Guzzo v. Town of St. John*, 131 N.E.3d 179, 180 (Ind. 2019).  Under the prior identity deception statute, someone that "knowingly or intentionally obtains, possesses, transfers, or uses the identifying information of another person…without the other person's consent and with intent to harm or defraud another person, assume another person's identity, or profess to be another person commits identity deception, a Level 6 felony." *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014) (citing Ind. Code § 35–43–5–3.5(a)).  As amended, the Indiana Legislature removed the consent requirement but retained that the defendant "professed to be another." *See* Ind. Code 35-43-5-3.5 *as amended* by P.L.174-2021, SEC.46, eff. July 1, 2021 ("A person who, with intent to harm or defraud another person, knowingly or intentionally obtains, possesses, transfers, or uses identifying information *to profess to be another person*, commits identity deception, a Level 6 felony") (emphasis added).

Here, Plaintiffs have not pled sufficient facts to make its identity deception claim plausible. The Defendants learned of Plaintiffs' identities from Ballard (Filing No. 62 at 8). Defendants' use of Plaintiffs' identifying information was not known until the documentary was released.  This occurred after the identity deception statute was amended and, as such, the amended statute

governs Plaintiffs' identity deception claim.  Defendants argue that Plaintiffs have not and perhaps cannot allege the Defendants "profess to be another person."  (Filing No. 62 at 33-37.)  The Court agrees with the Defendants.  Nowhere in Plaintiffs' Complaints do they allege that the Defendants professed to be them and for that simple reason Plaintiffs' identity deception claim fails.

### 3.   Count V: Theft

Defendants argue they never "exerted control" over Plaintiffs' "identity, name, image, likeness, and story" (Filing No. 62 at 36-37; Filing No. 86 at 22-23).  The Court agrees.  Criminal conversion occurs when "[a] person...knowingly or intentionally exerts unauthorized control over property of another person." Ind. Code § 35–43–4–3(a).  That element requires a defendant "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Ind. Code § 35–43–4–1. However, merely using another's name without permission, which is what the Plaintiffs have alleged the Defendants did here, does not constitute any of those activities. *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2009 WL 3200587, *1–2, 2009 U.S. Dist. LEXIS 88695, *4 (S.D. Ind. 2009) (Lawrence, J.) (granting motion to dismiss ICVA claim regarding conversion of trademark and trade dress). *See also Heckler & Koch, Inc. v. Coharie Arms, Inc.*, 2010 WL 987747, *2, 2010 U.S. Dist. LEXIS 23460, *5–7 (S.D. Ind. 2010) (Young, C.J.) (dismissing ICVA claim for conversion of trade dress because the defendant's infringing use was in no way "in exclusion and defiance of the owner's rights" and was thus not unauthorized control).  The Plaintiffs have, therefore, failed to state a claim for conversion of their "identity, name, image, likeness, and story".

Conversion is a lesser-included-offense to theft.  *See Moser v. State*, 433 N.E.2d 68, 69 (Ind. Ct. App. 1982) ("Absence of the element of 'intent to deprive' distinguishes criminal conversion from theft.").  Because, as discussed above, the Plaintiffs cannot establish conversion,

they necessarily cannot establish theft either.  Therefore, Plaintiffs' theft claim is not plausible on its face.

## IV.   CONCLUSION

For the reasons explained above, Defendants' Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part** (Filing No. 61).  Judgment on the pleadings is **granted** as to Counts  IV and V and these claims are **dismissed with prejudice**, as no amount of revision could cure their legal deficiencies.[11]  Judgment on the pleadings is **denied** as to Counts I, II and III, and this action may proceed with respect to these claims.

**SO ORDERED.**

Date:   6/6/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Matthew Thomas Ciulla
MACGILL PC
matthew.ciulla@macgilllaw.com

Robert D. MacGill
MACGILL PC
robert.macgill@macgilllaw.com

Scott E. Murray
MACGILL PC
Scott.Murray@MacGillLaw.com

Alejandra Reichard
BARNES & THORNBURG, LLP (Indianapolis)
alejandra.reichard@btlaw.com

Jesse Feitel
DAVIS WRIGHT TREMAINE LLP
jessefeitel@dwt.com

---

[11] *Cf. Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n. 3 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

Rachel Strom
DAVIS WRIGHT TREMAINE LLP
rachelstrom@dwt.com

Steven M. Badger
BARNES & THORNBURG, LLP (Indianapolis)
steve.badger@btlaw.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com