# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SARAH BOWLING, | ) | |
| LORI KENNARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-01281-TWP-MJD |
| | ) | |
| NETFLIX, INC., | ) | |
| NETFLIX WORLDWIDE ENTERTAINMENT, | ) | |
| LLC, | ) | |
| REALHOUSE PRODUCTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER ON DEFENDANTS' MOTIONS *IN LIMINE* AND
## MOTION FOR RULING REGARDING PLAINTIFFS' TRIAL EXHIBITS

This matter is before the Court on eleven Motions *in Limine* filed by Defendants Netflix, Inc., Netflix Worldwide Entertainment, LLC (together, "Netflix"), and RealHouse Productions, LLC (collectively, "Defendants") (Filing No. 292; Filing No. 299; Filing No. 300). Also pending is a Motion for Ruling Regarding Plaintiffs' Trial Exhibits filed by the Defendants (Filing No. 333). Plaintiffs Sarah Bowling ("Ms. Bowling") and Lori Kennard (together, "Plaintiffs"), and former Plaintiff Laura DiSalvo ("Ms. DiSalvo") initiated this lawsuit alleging the Defendants tortiously disclosed their identities as children of Dr. Donald Cline ("Dr. Cline") to millions of people on social media and on Netflix's streaming platform in the documentary "*Our Father*" (the "Film"), without their consent. Following the partial grant and partial denial of a motion for judgment on the pleadings, the Court's Order on Defendants' summary judgment motion dismissed all of Ms. DiSalvo's claims and narrowed the Plaintiffs' claims for trial. Plaintiffs' invasion of privacy claims against Defendants are set to be tried by a jury on December 2, 2024. Defendants filed the instant motions seeking preliminary rulings from the Court regarding the admissibility of certain evidence

or arguments. For the following reasons, Defendants' Motions *in Limine* are **granted in part and denied in part**, and their Motion for Ruling is **granted in part and denied in part**.

## I.     LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401. "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose." *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 14-cv-1862, 2018 WL 3120623, at *2 (S.D. Ind. June 26, 2018).

## II.     DISCUSSION

The Court will address each of Defendants' Motions *in Limine* before discussing their Motion for Ruling.

### A.     Motion in *Limine* No. 1: Statements About Seeing Plaintiffs' Names (Filing No. 300)

Defendants first move to exclude out-of-court statements by third parties that they saw Plaintiffs' names in the Film (Filing No. 300 at 6–7). Defendants argue these statements are inadmissible hearsay because they are offered to prove that the third parties saw Plaintiffs' names. *Id.* Defendants also contend that all statements regarding Ms. DiSalvo's name are inadmissible

and irrelevant under Rules 402 and 403 because Ms. DiSalvo has been dismissed from this action. The Court will separately address the admissibility of statements about Plaintiffs' names and the admissibility of statements about Ms. DiSalvo's name.

     1.     <u>Statements about Seeing Plaintiffs' Names</u>

Plaintiffs contend that the out-of-court statements by people who saw Plaintiffs' names are either not hearsay or fall within several exceptions to the rule against hearsay. Plaintiffs argue that the statements are not hearsay because they will not be offered for the truth of the matter asserted and will instead be offered to show Plaintiffs' mental distress and damages (Filing No. 317 at 1). They explain that "[j]ust the receipt of the message—true or false—itself was distressing." *Id.* In their reply, Defendants argue that "[u]nless the out-of-court statements are being offered for the truth that other people saw Plaintiffs' names in the documentary, Plaintiffs' reactions to the statements would make no sense" because "Plaintiffs must show that the *disclosure of their names in the documentary* caused them distress". (Filing No. 336 at 2 (emphasis in original).)

The Court is not persuaded by the Defendants' reply. The fact that third parties told Plaintiffs that they saw Plaintiffs' names in the Film, causing Plaintiffs to believe that their names *had* been disclosed to those third parties, is relevant to showing that Plaintiffs were harmed by Defendants' alleged disclosure, regardless of whether the third parties actually saw Plaintiffs' names. The Court therefore finds that Plaintiffs have identified a permissible, non-hearsay use of the out-of-court statements. Defendants have not shown that the out-of-court statements about Plaintiffs' names are clearly not admissible for any purpose, so their request to exclude those statements is **denied**.

The Court need not, and does not, address whether the statements would be admissible for any or all of the other reasons asserted by Plaintiffs (Filing No. 317 at 2–3). Determinations about the admissibility of specific statements on particular bases are better made in the context of trial.

2.    <u>**Statements about Seeing Ms. DiSalvo's Name**</u>

Plaintiffs contend that Ms. DiSalvo's name "was placed directly next to Plaintiff Sarah Bowling's name, in the same frame," so "[a]ll of Laura DiSalvo's evidence relating to her quest to have her name blurred in the film is thus directly relevant to Sarah's claims in this case." (Filing No. 317 at 3.) The Court disagrees. Ms. DiSalvo's claims have all been dismissed, and she is no longer a party. Evidence about her efforts to have her name blurred is not relevant simply because her name appears next to Ms. Bowling's name. The out-of-court statements about Ms. DiSalvo's name are irrelevant to Plaintiffs' claims, and even if these statements had some nominal probative value, that value would be substantially outweighed by the risk of confusing the issues, since Ms. DiSalvo was a plaintiff until only recently. The Court therefore **grants** Defendants' request to exclude out-of-court statements about seeing Ms. DiSalvo's name.

B.    <u>**Motion *in Limine* No. 2: Disclosure of Other Siblings' Names (Filing No. 300)**</u>

Defendants next move to bar Plaintiffs from offering evidence or argument related to other individuals whose names were disclosed in the Film, including evidence that Defendants violated any other half-siblings' rights (Filing No. 300 at 8–9). Defendants argue that this evidence is irrelevant to Plaintiffs' claims, would cause unfair prejudice, and would lead to a "mini-trial" on whether the other siblings' identities were privately held. *Id.* at 8.

Plaintiffs respond that "evidence of these other individuals' exposure is relevant and admissible to show the extent and magnitude of Defendants' failings with respect to this film." (Filing No. 317 at 3). Plaintiffs also argue that this evidence is relevant under Federal Rule of Evidence 406, which permits admission of evidence to prove that a person acted in accordance with a particular "habit or routine practice," and Rule 404(b)(2), which permits the admission of evidence of another "crime, wrong, or act" for certain non-propensity purposes.

Defendants' arguments are well taken.  Whether Defendants violated other half-siblings' rights, as a matter of law, does not appear to have any relevance to Plaintiffs' claims and would certainly present a risk of unfair prejudice.  The Court will therefore preclude Plaintiffs from arguing that Defendants violated other half-siblings' rights by disclosing their identities in the Film.

Defendants ask the Court to exclude Declaration Exhibits 27, 28, 29, 30, and 31 because these exhibits supposedly relate to "individuals other than Plaintiffs."  (Filing No. 300 at 8). Plaintiffs argue that Defendants have made no showing of this fact.  (Filing No. 317 at 4.)  The Court is not persuaded.  To the extent that those declaration exhibits refer to disclosure of half-siblings, that evidence should be excluded.  Accordingly, Defendants' Motion *in Limine* No. 2 is **granted** to the extent that Plaintiffs may not offer evidence or argue that Defendants violated other half-siblings' rights by disclosing their identities in the Film.

C.    __Motion *in Limine* No. 3: Third-Party Statements on Legal Claims (Filing No. 300)__

Defendants seek to exclude statements by third parties regarding the value, viability, or elements of Plaintiffs' potential legal claims against Defendants (Filing No. 300 at 9–10). Defendants argue that these statements are inadmissible for several reasons and propose that Plaintiffs' exhibits should be redacted to exclude these statements.  *Id.* at 10.  Plaintiffs do not oppose redacting the statements, and they reasonably request that Defendants send proposed redactions to Plaintiffs within one week after the final pretrial conference (Filing No. 317 at 5). Accordingly, Defendants' unopposed request to exclude the statements discussing Plaintiffs' legal claims is **granted**, and Defendants are **ordered** to send proposed redactions to Plaintiffs no later than **one week after the final pretrial conference**.

D.    __Motion *in Limine* No. 4: Evidence of Other Lawsuits and Claims (Filing No. 300)__

Defendants' Motion *in Limine* No. 4 seeks to exclude two types of evidence or argument. First, Defendants move to preclude Plaintiffs from referring to other lawsuits against Defendants

(Filing No. 300 at 11).  Defendants' request is well founded, based on ample caselaw, and unopposed by Plaintiffs, (Filing No. 317 at 5), so it is **granted**.

Second, Defendants move to exclude evidence or argument "solely" about claims in this lawsuit that have already been dismissed, including Plaintiffs' claims under the Crime Victims Relief Act and all of Ms. DiSalvo's claims.  Defendants argue this type of evidence is irrelevant to Plaintiffs' remaining claims.  *See Coyle Nissan, LLC v. Nissan N. Am., Inc.*, No. 18-cv-75, 2022 WL 2805385, at *3 (S.D. Ind. Feb. 2, 2022); *Barnes v. Gen. Motors LLC*, No. 20-cv-87, 2023 WL 3436098, at *2 (S.D. Ind. May 12, 2023).

In response, Plaintiffs dispute the meaning of "solely".  They again argue that evidence of Ms. DiSalvo's claims are not "solely" relevant to her claims because her and Ms. Bowling's names appear in the same scenes.  As the Court has already explained, evidence about Ms. DiSalvo's "quest to have her name blurred" is not relevant to Ms. Bowling's claims (and is therefore "solely" related to Ms. DiSalvo's claims) even though their names appear next to one another.  Evidence or argument about Ms. DiSalvo's claims is thus irrelevant and inadmissible.

Plaintiffs also respond that much of their evidence is relevant to their invasion of privacy claims *and* their dismissed claims, so "Plaintiffs do not understand Defendants' request."  The Court finds that Defendants' request is clear and well supported by Rule 402 and caselaw.  To resolve any confusion, if evidence or argument is relevant to Plaintiffs' remaining invasion of privacy claims, then it is not "solely" relevant to Plaintiffs' dismissed claims and is not included within Defendants' request.  Stated differently, Plaintiffs may offer admissible evidence relevant to their invasion of privacy claims, regardless of whether that evidence or argument might also relate to their dismissed claims.  But Plaintiffs are precluded from offering evidence or argument that is not relevant to their invasion of privacy claims, or evidence or argument that refers to the

existence of Plaintiffs' dismissed claims.  Plaintiffs' response confirms that they do not intend to

offer any such evidence. (Filing No. 317 at 6 ("Plaintiffs do not intend to introduce evidence that

is 'relevant solely to the dismissed claims' – 'the claim for intentional infliction of emotional

distress, and the claims under the Indiana Crime Victim's Relief Act.'") (emphasis in original).)

Defendants' Motion *in Limine* No. 4 is therefore **granted**.

**E.      Motion *in Limine* No. 5: Evidence of Insurance (Filing No. 300)**

Defendants anticipate that at trial, Plaintiffs will offer "evidence that RealHouse secured,

and Netflix paid for, errors and omissions insurance coverage for *Our Father*" because Plaintiffs'

exhibit list includes policy documents and communications with Defendants' insurer (Filing No.

300 at 12).  Defendants argue this evidence is inadmissible under Rule 411, which provides that

"[e]vidence that a person was or was not insured against liability is not admissible to prove whether

the person acted negligently or otherwise wrongfully," but may be admitted "for another purpose."

Even if this evidence were admissible "for another purpose," Defendants argue it would be highly

prejudicial and thus inadmissible under Rule 403.  *Id.* at 13.

In their response, Plaintiffs summarize the specific insurance-related exhibits they intend

to offer, which include communications from Defendants to an insurance broker and statements

made in an insurance application (Filing No. 317 at 6–7).  Plaintiffs argue that these statements are

not inadmissible under Rule 411 because none of them is evidence that Defendants were or were

not insured and because the statements are admissible for two other purposes: to show Defendants'

knowledge of the "privacy risk" associated with the Film; and for impeachment.  *Id.* at 7–8.

Plaintiffs also contend that the statements are not inadmissible under Rule 403 because they have

high probative value and the parties' agreed instructions can cure any risk of prejudice.

It appears that Defendants' concerns are based on portions of exhibits that are immaterial

to showing Defendants' knowledge about privacy risks.  The statements and policy document at

issue can easily be redacted to remove any information that would identify those exhibits as relating to insurance, which would resolve Defendants' concerns under Rule 411 and 403 and allow Plaintiffs to offer those exhibits to show Defendants' knowledge and/or for impeachment.

Defendants' Motion *in Limine* No. 5 is therefore **denied in part**, in that the Court will not preliminarily exclude Defendants' statements to their insurance broker and statements made on their insurance applications, but **granted in part**, in that Plaintiffs must redact any portions of those statements that would identify those exhibits as relating to insurance. As the party moving for exclusion, Defendants are **ordered** to send proposed redactions to Plaintiffs no later than **one week after the final pretrial conference**.

**F.    Motion *in Limine* No. 6: Prior Statements by Counsel (Filing No. 300)**

Defendants ask the Court to exclude statements made by Defendants' counsel during a March 2023 discovery conference, as well as any other statements made by defense counsel during this action (Filing No. 300 at 15–16). In particular, Defendants state,

> In a discussion about why Plaintiffs' names were not on Defendants' legal clearance log, Defendants' counsel stated that, among other things, "there may have been a mistake." ECF No. 135 at 34:14–19 (emphasis added). The statement was not definitive; and there is no evidence Defendants' counsel was authorized to make a factual admission in that context.

*Id*. at 15. Plaintiffs point out additional statements by Defendants counsel: "for the plaintiffs, they're not on the log, so I don't know if the lawyers looked at them or not, but they were missed." (Filing No. 130 at 46:24-47:1.) And, "[t]hat is just an honest mistake by the reviewers that manifest in the disclosure." *Id*. at 49:12-14. The statements at issue were made at a discovery hearing in response to questions from the Magistrate Judge. (*See* Filing No. 130.) Defendants argue that these statements are categorically inadmissible, relying on the proposition that "'statements of attorneys are not evidence.'" (Filing No. 300 at 15 (quoting *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002)).)

Plaintiffs argue that such statements by counsel are "evidentiary admissions and admissible pursuant to Rule 801(d)(2)." *TAS Distrib. Co. v. Cummins, Inc.*, 2013 U.S. Dist. LEXIS 201284, at *3 (C.D. Ill. June 12, 2013); *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 832 (C.D. Ill. 2014) ("[A]s a statement made by Bauknecht's attorney, it is an evidentiary admission by a party opponent that would not be subject to a hearsay objection. Fed. R. Evid. 801(d)(2). (Filing No. 317 at 11). Defendants also cite *Moran v. United States*, in which the District Court for the Central District of Illinois stated, in a footnote, that a letter by the plaintiffs' attorney was inadmissible because "[i]n addition to hearsay . . . statements by attorneys are not evidence."). This dictum, though, yields to Seventh Circuit precedent stating that "[a]n attorney *may be* the agent of his client for purposes of Rule 801(d)(2)(D)." *United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990) (emphasis in original); *see United States v. Jung*, 473 F.3d 837, 841 (7th Cir. 2007).

Importantly, the Seventh Circuit has directed courts to "exercise caution in admitting statements that are the product" of the attorney-client relationship. *Harris*, 914 F.2d at 931. Statements by an attorney should be admitted only "in rare cases when absolutely necessary, in order to avoid impairing the attorney-client relationship, chilling full disclosure by a defendant to his lawyer, and deterring defense counsel from vigorous and legitimate advocacy." *United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992). The statements in *Campania* were made during trial. *See Campania*, 390 F.3d at 852–53 (refusing to accept attorney's trial statement characterizing of the record). In the context in which the statements by counsel were made--a hearing on Defendant RealHouse Productions, LLC's motion for *in camera* review and for resolution of unaddressed privileged issues implicated by the Court's February 17, 2022 Order on Motion to Compel (Filing No. 104)--the Court considers the statements comparable to the statements in *Campania,* an

attorney's characterization. Therefore, the statements are not admissible evidence. Motion *in Limine* No. 6 is therefore **granted** as to counsel's statements in Filing No. 130.

**G.    Motion *in Limine* No. 7: References to "Out of Town" Attorneys (Filing No. 300)**

Defendants ask the Court to preclude Plaintiffs from referring to defense counsel as "out-of-town" lawyers, "Hollywood" lawyers, or "New York" lawyers (Filing No. 300 at 16). Plaintiffs do not oppose this motion, and it is **granted**.

**H.    Motion *in Limine* No. 8: Testimony of Plaintiffs' Husbands (Filing No. 300)**

Defendants next move to preclude Plaintiffs' husbands from testifying because "Plaintiffs blocked discovery into the full scope of what their husbands observed" on the basis of spousal privilege (Filing No. 300 at 16). During the husbands' depositions, Plaintiffs' counsel objected to all questions about any communications between Plaintiffs' and their husbands, and only permitted the husbands to testify about the Plaintiffs' physical reactions, which the parties agree is not privileged. Defendants argue that Plaintiffs cannot use the husbands' non-privileged testimonies about Plaintiffs' physical reactions as a "sword" while also using the spousal privilege as a "shield" against communications that may provide context for the physical reactions (Filing No. 300 at 18).

Defendants' reliance on the "sword and shield" doctrine is misplaced for two reasons. First, although courts have repeatedly held that parties may not use *privileged* information as a sword and the privilege as a shield, Defendants cite no authority in which a Court has held that *non-privileged* information invokes the same doctrine. *See, e.g.*, *McCullough v. Hanley*, No. 17 CV 50116, 2019 WL 3776962, at *12–13 (N.D. Ill. Aug. 12, 2019) ("Without any use of the previously privileged/now disclosed information, the sword has not been wielded.").

Second, as Plaintiffs note in their response, the "sword and shield" doctrine is a waiver doctrine, not an exclusionary rule, and any "sword and shield" issues should have been raised with the Magistrate Judge during discovery. *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 715 –16

(N.D. Ill. 2015) ("[S]ubject matter waiver generally occurs only where a party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable. That is not what is occurring here. Mr. Patrick has not attempted to rely on any aspect of any conversation he ever had with Mr. Theis. Quite the contrary. He is quite adamant that none of those conversations should be admissible in this case. Mr. Patrick is therefore not seeking to use the privilege simultaneously 'as a shield and a sword.'").

Defendants alternatively ask that the husbands' testimonies be "carefully circumscribed to include only what Defendants were permitted to discover." (Filing No. 300 at 18). Plaintiffs have indicated that they do not intend to exceed the bounds of discovery at trial, so an order *in limine* is unnecessary (Filing No. 317 at 14 (requesting that the husbands "be permitted to testify along the exact same scope" as of their depositions)). For these reasons, Defendants' Motion *in Limine* No. 8 is **denied**.

I.    **Motion *in Limine* No. 9: Unsupported Arguments About Damages (Filing No. 300)**

In their ninth motion, Defendants ask that Plaintiffs be precluded from "arguing or suggesting damages numbers that are unsupported by any relevant evidence" or are based on improper analogies, citing the general rule that jurors may not base damages on conjecture or speculation (Filing No. 300 at 18–19). Defendants predict that Plaintiffs will offer unsupported damages arguments because they "have developed little in the way of concrete evidence to support their damages request in this case." *Id.* at 19.

In response, Plaintiffs describe the evidence they have shared with Defendants, which provides the evidentiary basis for their damages requests (Filing No. 317 at 15). Plaintiffs assert that none of their compensatory damages figures are "unmoored from the facts," and that their punitive damages request will likewise be supported by admissible financial documents. *Id.*

At this stage, it does not appear that Plaintiffs intend to offer any of the speculative arguments or analogies that Defendants describe in their motion.  Defendants' Motion *in Limine* No. 9 is **granted** as to damages arguments "unsupported by relevant evidence."

**J.**  **Motion in *Limine* No. 10: Request to Play Film Before Opening Statements and to Exclude Images from Film (Filing No. 299)**

In their Motion *in Limine* No. 10, Defendants request: (1) that the jury view the entire Film; (2) that the Film be played before opening statements; and (3) that Plaintiffs be precluded from showing "images from the documentary that have been edited, zoomed in, or otherwise altered or enhanced" (Filing No. 299 at 4).

**1.  Presentation of the Entire Film**

Defendants argue that the jury must view the entire Film in order to properly and accurately assess "the newsworthy value of the allegedly private information, against both the degree it was actually disclosed by the defendant and the extent to which the plaintiff previously disclosed the information herself," as well as damages (Filing No. 299 at 2).  Defendants cite several cases in which courts purportedly "ha[d] the jury watch the entire work—not just the challenged portion— as a matter of course."  *Id.* at 2–3.  However, in each cited case, the *court* reviewed the entire work and dismissed the plaintiffs' claims before they ever reached a jury.  *Howard v. Des Moines Reg. & Trib. Co.*, 283 N.W.2d 289, 303 (Iowa 1979) (affirming order granting summary judgment in favor of defendants); *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997) (same); *Chau v. Lewis*, 935 F. Supp. 2d 644, 661 (S.D.N.Y. 2013) (same), *aff'd*, 771 F.3d 118 (2d Cir. 2014); *Bogie v Rosenberg*, 705 F.3d 603, 608–12 (7th Cir. 2013) (affirming order granting motion to dismiss invasion of privacy claims).  Regardless, these cases illustrate the importance of reviewing an entire creative work when considering invasion of privacy claims.  The Court therefore concludes that it would be appropriate for the jury to view the entire Film, and

Plaintiffs do not oppose Defendants playing the entire Film during Defendants' case-in-chief (Filing No. 314 at 6).  Defendants' request to play the Film in full for the jury is therefore **granted**.

### 2.    Presentation of the Film Before Opening Statements

Defendants next request that the entire Film be played for the jury before opening statements.  Defendants argue that that the Film is the basis of Plaintiffs' claims, and "for the jury the evaluate these claims fairly and adequately, the entire 97-minute documentary should be played … before the jury is primed about where in the documentary each Plaintiff's name appears" or "how to interpret the relevant scenes." (Filing No. 299 at 1.)  Defendants are specifically concerned that jurors will be "much more likely to notice Plaintiffs' names and are likely to be misled about what ordinary viewers saw" if they are told where Plaintiffs' names appear before watching the Film.  *Id.* at 3–4.  Defendants also argue that playing the Film once in full will avoid unnecessary arguments about the "rule of completion" if and when other excerpts are played.  Fed. R. Evid. 106.

Plaintiffs respond that Defendants' request is inconsistent with federal rules and customs of trial procedure, which anticipate that trial will begin with opening statements (Filing No. 314 at 2 (citing cases and pattern jury instructions)). Plaintiffs also contend that they are entitled to speak to the jury first, since they bear the burden of proof, and it would be unfair to allow Defendants' Film to precede their opening.  *Id.* at 2–3.  Plaintiffs clarify that they do not intend to make any arguments during opening that would "prime" the jurors.  *Id.* at 6.

There is very little caselaw addressing this issue.  Defendants cite a 2015 case from the Southern District of New York in support of their request, *Mitre Sports International Ltd. v. Home Box Office, Inc.*, No. 08-cv-9117 (S.D.N.Y. 2015).  In *Mitre*, the court played a full recorded interview for the jury before opening statements, but *Mitre* is distinguishable in three ways.  First, the parties in *Mitre* agreed to play the interview before opening statements.  Trial Tr. at 42, *Mitre*,

No. 08-cv-9117 (No. 496).  Second, the *Mitre* interview was much shorter than the Film, thus limiting the gap between preliminary instructions and opening statements.  And third, the reason for showing the full interview before openings in *Mitre* was different than the reason Defendants want to play the full Film.  In *Mitre*, a libel case, the plaintiffs alleged that defendants "deceptively edited their interviews to make them appear to be saying something very different from what they actually said."  *Id.* at 50.  The full interview therefore served to show the jury what the plaintiff actually stated before hearing opening statements about whether the edited interview was libelous.

Here, by contrast, Defendants want to show the Film before openings simply so that jurors will watch the Film once without having been "primed" (*i.e.*, without knowing exactly where or when Plaintiffs' names will appear).  The value of having the jurors watch the Film un-"primed" is limited, though, because the jurors will already know Plaintiffs' names and know that their names appear somewhere in the Film.  That information alone places jurors in a different position than an ordinary viewer.  Further, depriving jurors of additional information might unintentionally make them hypervigilant for Plaintiffs' names.  Further, Defendants offer no evidence or authority suggesting that jurors would be unable to apply the correct legal standards even if they hear opening statements before watching the Film themselves.

The limited value of showing the full ninety-seven-minute Film before opening statements does not justify a departure from standard federal practices and procedures.  Defendants' request to play the full Film before opening statements is **denied**.

To allay some of Defendants' concerns that opening statements may predispose the jury to certain legal conclusions, the Court reminds both sides that "it is not proper to use the opening statement to argue the case, to instruct as to the law, or to express Counsel's personal opinion."  (Filing No. 125 at 6.)  Counsel should limit their statements to "what [they] expect the evidence to

show."  *Id.*; *see Testa v. Vill. of Mundelein*, 89 F.3d 443, 446 (7th Cir. 1996) ("Because of the widespread belief that juries typically make up their minds about a case after the opening statements, attorneys often find it tempting to convert their statements into improper opening arguments.  The purpose of an opening statement is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole. It is not an occasion for argument.").

3.     **Admissibility of Images from the Film**

Defendants also seek to preclude Plaintiffs from offering "images from the documentary that have been edited, zoomed it, or otherwise altered or enhanced." (Filing No. 299 at 4.) Defendants argue that this type of evidence would "distort how Plaintiffs' names were actually disclosed in the documentary and mislead the jury about the most important piece of evidence in the case."  Defendants repeat this request in their Motion for Ruling Regarding Plaintiffs' Trial Exhibits, arguing that screenshots from the Film are inadmissible under Federal Rules of Evidence 901, 403, and 106 (Filing No. 333 at 1–2).

In response, Plaintiffs argue that viewers of the Film (and its trailer) can pause, rewind, rewatch, and photograph certain frames, (Filing No. 314 at 6), and Plaintiffs should "be permitted to show what any reasonable viewer could see themselves—still frames and other excerpts from the film . . . through exhibits, images, and demonstratives."  *Id.* at 7.

Defendants have not met their burden of showing that the images are inadmissible under Federal Rules of Evidence 901, 403, and 106.  It would be premature to exclude the images under Rule 901 because Defendants have not shown that Plaintiffs will be unable to authenticate the images at trial.  As for Rule 403, Defendants have not shown that the probative value of the images is "substantially outweighed" by the risk of confusion of the issues or misleading the jury.  The Court agrees with Plaintiffs that the images have probative value as evidence of where and how a

viewer could have seen Plaintiffs' names.  The Court expects that jurors will be readily able to understand that screenshots of the Film are just that—screenshots—and will not be confused as to how Plaintiffs' names actually appear in the Film or misled about whether or how an average viewer might have seen Plaintiffs' names.  Any potential confusion can be remedied on cross-examination, by Defendants playing some or all of the Film for the jury, or through a curative instruction.  Defendants will likewise be able to address how much weight the jurors should give any images, versus the Film itself, during their case-in-chief, on cross-examination, and in closing arguments.  The potential risks of confusion or misleading the jury do not substantially outweigh the probative value of the images, so the images are not inadmissible under Rule 403.

Rule 106 also does not warrant exclusion because it is a rule of admission, not exclusion. Rule 106 provides: "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106; *see United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986). "Rule 106's remedy is thus to allow the objecting party to include additional evidence. So, an objection under Rule 106 is ordinarily not a basis for the exclusion of evidence."  *Smith v. JDW Int'l, Inc.*, No. 22-cv-299, 2024 WL 1348313, at *2 (S.D. Ind. Mar. 28, 2024).[1]  The Court will not exclude the images under Rule 106.

Defendants have not shown that the images from the Film that Plaintiffs intend to offer are clearly not admissible for any purpose, so at this preliminary stage, Defendants' request to preclude Plaintiffs from offering the images from the Film showing their names is **denied**.

---

[1] The Third Circuit Court of Appeals has stated that Rule 106 "may counsel exclusion where, for example, the government improperly fails to preserve evidence, preserving only those portions of a writing or recording that are helpful to its case and destroying potentially exculpatory portions," but there are no similar concerns in this case. *United States v. Sherman*, 293 F. App'x 158, 159–60 (3d Cir.).

Defendants alternatively request that any such images be shown with a "disclaimer" that the image has been "altered." (Filing No. 299 at 4.) Plaintiffs assert that they will not "alter" any exhibits or evidence in this case (Filing No. 314 at 7). And as explained above, the Court finds that jurors will be able to easily understand whether exhibits are screenshots or photographs of the Film, and that Defendants can resolve any potential confusion about the origin of the images on cross-examination or through additional evidence. Defendants' alternative request is thus also **denied**. However, if any altered images are offered, and if the altered image is allowed into evidence, the Court agrees that a disclaimer would be appropriate.

K.    **Motion in *Limine* No. 11: Evidence of Creative Choices (Filing No. 292)**

In their eleventh and final Motion *in Limine*, Defendants seek to exclude evidence or argument about "creative choices" in the Film and about the Film's "factual accuracy." (Filing No. 292.) Defendants argue that their choices in depicting Dr. Cline, and the factual accuracy of scenes in which he is portrayed, are irrelevant to Plaintiffs' remaining invasion of privacy claims, that their creative choices are protected by the First Amendment, and that the challenged evidence is "plainly designed to inflame jurors who might find these constitutionally[]protected scenes and religious references offensive." *Id.* at 3.

Plaintiffs respond that Defendants placed the truthfulness of the Film at issue by arguing that it is newsworthy (Filing No. 321 at 6). But the newsworthiness of the entire Film is not at issue. Only the newsworthiness of Plaintiffs' identities is. Plaintiffs also argue that Defendants have "inextricably intertwined" Plaintiffs' names with the topics identified in their motion, and their claims and damages cannot be separated from the depictions of Dr. Cline. *Id.* at 1, 9. Even if Plaintiffs' claims were originally tied to the Film's creative choices, those ties were severed by the Court's summary judgment order, which held that the Defendants had a First Amendment right to depict Dr. Cline in the way that they did. Plaintiffs must show that their damages arise from

Defendants' disclosure of the fact that Dr. Cline is their father, not from how Defendants' chose to depict their father. Evidence or argument about the way that Defendants chose to portray Dr. Cline and his motivations—including religious objects, white supremacist paraphernalia, and clips from the Film in which an actor portrays Dr. Cline—is not relevant to Plaintiffs' invasion of privacy claims. Such evidence would serve only to unfairly prejudice Defendants, confuse the jury, and risk jury nullification. This type of evidence and argument is therefore inadmissible under Federal Rules of Evidence 402 and 403.

Plaintiffs additionally argue that they have a First Amendment right to freely testify about their religion (Filing No. 321 at 5). Although Plaintiffs have a constitutional right to freely express and practice their religion, they may not offer unlimited trial testimony about their religious beliefs. Indeed, the Federal Rules of Evidence expressly preclude evidence of a witness's religious beliefs in certain circumstances. Fed. R. Evid. 610. This Court has discretion to limit or exclude this type of evidence. *See* Entry on Pending Pretrial Mots. at 8, *United States v. Posey*, No. 20-cv-94 (No. 529) (S.D. Ind. June 5, 2024) (precluding defendant from "elaborate[ing] on the fact that he is a Christian, or his family's religious upbringing").

The Court understands that Plaintiffs may take great offense to the Film and that they might have suffered harm because of the way Defendants' chose to depict Dr. Cline. Nonetheless, Plaintiffs cannot recover damages for those types of harms in this lawsuit. Defendants' creative choices in depicting Dr. Cline, a public figure, are protected by the First Amendment. Plaintiffs may only recover damages for harms caused by the disclosure of their identity as Dr. Cline's children. Defendants' Motion *in Limine* No. 11 is therefore **granted**.

L.    **Motion for Ruling Regarding Plaintiffs' Trial Exhibits[2] ([Filing No. 333](Filing No. 333))**

In their Motion for Ruling, Defendants move to exclude three types of evidence: (1) images and clips from the Film; (2) pleadings and filings in this action; and (3) Plaintiffs' discovery responses.

### 1.    Images and Excerpts from the Film

Defendants ask that the Court preclude Plaintiffs from offering screenshots and selected "clips" from the Film under Federal Rules of Evidence 106, 403, and 901 ([Filing No. 333 at 1](Filing No. 333 at 1)–2). For the reasons the Court discussed in ruling on Defendants' Motion *in Limine* No. 10, the Court will not preclude Defendants from offering screenshots from the Film showing Plaintiffs' names.

Likewise, the Court will not preliminarily exclude clips from the Film under Rule 106, which is a rule of admission, or Rule 901, the requirement of authenticating or identifying an item of evidence. To do so would be premature. In evaluating whether the Film clips should be excluded under Rule 403, the Court distinguishes between clips that show Plaintiffs' names and those that do not.  Clips showing Plaintiffs' names have strong probative value, since they are the focus of this lawsuit, and the Court does not find that this probative value is strongly outweighed by the risk of confusion or misleading the jury. Jurors would easily understand that clips from the Film are simply clips, and they would not be confused or misled as to how those clips actually appear in the Film.  Defendants' request to exclude clips of the Film that show Plaintiffs' names is **denied**.

On the other hand, clips that do not show Plaintiffs' names have very little, if any, probative value, and they present a risk of unfair prejudice to Defendants.  As the Court explained in its summary judgment order and in ruling on Defendants' Motion *in Limine* No. 11, Defendants' decision to depict Dr. Cline in an offensive or grotesque way is protected by the First Amendment

---

[2] Pursuant to the Case Management Order, Defendants' Motion for Ruling should have been filed as written objections, not a motion, or as a motion *in limine* two weeks before the final pretrial conference ([Filing No. 37 at 7](Filing No. 37 at 7)–8).

because Dr. Cline and his misconduct are matters of public concern (Filing No. 271 at 34).  The

Court therefore **grants** Defendants' request to preclude clips of the Film that do not show Plaintiffs'

names pursuant to Rule 403.

###    2.    Pleadings and Filings

Defendants move to exclude all pleadings and filings in this action, several of which are

found on Plaintiffs' exhibit list.  The request includes "Plaintiffs' (hearsay) complaint, briefs filed

by the parties on the motion for judgment on the pleadings and summary judgment motion,

declarations filed in support of various motions, and even this Court's orders on the motion for

judgment on the pleadings and the summary judgment motion." (Filing No. 333 at 3.)  Defendants

argues "[t]he jury should decide the case based on the facts they will hear at trial, and on the law

in their jury instructions.  The pleadings have no place in a jury trial and are inadmissible.  Fed. R.

Evid. 403."  *Id*. at 4. The Court agrees that ordinarily, pleadings and filings are not admissible

evidence.  However, there are exceptions, and Defendants argument is perfunctory and

undeveloped.  *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845

F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are

arguments unsupported by legal authority."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th

Cir. 2002) (stating that where party fails to support position with any legal analysis or citation, the

argument is waived).

Defendants cite no authority stating that pleadings are never admissible.  *Contra*

*Contractor Utility Sales Co., Inc. v. Certain-teed Products Corp.*, 638 F.3d 1061, 1084 (7th Cir.

1981) ("Although pleadings cease to be conclusive judicial admissions, they are admissible in a

civil action as evidentiary admissions."), *abrogated on other grounds by Mayer v. Gary Partners*

*& Co.*, 29 F.3d 330, 385 (7th Cir. 2000); *Eastern Natural Gas Corp. v. Aluminum Co. of Am.*, 126

F.3d 996, 1001 (7th Cir. 1997) (stating "the district court was clearly aware that prior pleadings

were generally admissible" but, in its discretion, excluded them under Rule 403). Defendants offer no argument as to why any particular pleading is irrelevant, why its probative value is substantially outweighed by any of the dangers identified in Rule 403, or why it is otherwise inadmissible. Defendants request to summarily exclude exhibits: 302, 362–364, 366–385, 394 is **denied**. If Defendants have specific objections to specific pleadings, then Defendants may raise those objections at the final pretrial conference or at trial.

      **3.**    <u>**Plaintiffs' Discovery Responses**</u>

Defendants lastly challenge Plaintiffs' ability to offer their own discovery responses, arguing that they are inadmissible hearsay when offered by Plaintiffs under Fed. R. Evid. 802. (Filing No. 333 at 4). The Court agrees that Plaintiffs' discovery responses fit the general definition of hearsay, and Plaintiffs have not explained how their discovery responses—exhibits 148, 149,150, 349, 358, 361—would be admissible at trial. Defendants' request to preliminarily preclude Plaintiffs from offering their own discovery responses is **granted**.

## III.    <u>CONCLUSION</u>

For the reasons discussed above, Defendants' Omnibus Motions *in Limine* (Filing No. 300) is **GRANTED in part and DENIED in part** as to Motion Nos. 1, and 5, **GRANTED** as to Motion Nos. 2, 3, 4, 6, 7, and 9, and **DENIED** as to Motion No. 8. Defendants' Motion *in Limine* No. 10 (Filing No. 299) is **GRANTED in part and DENIED in part**, and Defendants' Motion *in Limine* No. 11 (Filing No. 292) is **GRANTED**. Defendants' Motion for Ruling Regarding Plaintiffs' Trial Exhibits (Filing No. 333) is **GRANTED in part and DENIED in part**.

An order *in limine* is not a final, appealable order. If a party believes that evidence excluded by this Order becomes relevant or otherwise admissible during the trial, counsel may request a hearing outside the presence of the jury. Likewise, if a party believes that specific evidence is

inadmissible during the trial, counsel may raise specific objections to that evidence at the appropriate time.

    **SO, ORDERED**.

    Date:  11/6/2024

                                            Hon. Tanya Walton Pratt, Chief Judge
                                            United States District Court
                                            Southern District of Indiana


DISTRIBUTION:

Brad Dennis Brian
MUNGER, TOLLES & OLSON LLP
brad.brian@mto.com

J.   Benjamin Broadhead
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
ben.broadhead@faegredrinker.com

Matthew Thomas Ciulla
MACGILL PC
matthew.ciulla@macgilllaw.com

Jesse Feitel
DAVIS WRIGHT TREMAINE LLP
jessefeitel@dwt.com

Robert D. MacGill
MACGILL PC
robert.macgill@macgilllaw.com

Craig Ray Martin
GREENBERG TRAURIG
Craig.Martin@gtlaw.com

Sara A McDermott
MUNGER, TOLLES & OLSON LLP
sara.mcdermott@mto.com

Andrea Roberts Pierson
FAEGRE DRINKER BIDDLE &
REATH LLP (Indianapolis)
andrea.pierson@faegredrinker.com

Andrew T Nguyen
MUNGER, TOLLES & OLSON LLP
andrew.nguyen@mto.com

Jordan Cecelia Satterthwaite
MACGILL PC
cecelia.shaulis@macgilllaw.com

Rachel Strom
DAVIS WRIGHT TREMAINE LLP
rachelstrom@dwt.com

Mackenzie Thompson
MACGILL PC
mackenzie.thompson@macgilllaw.com

T. Josph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com

William M. Orr
MUNGER, TOLLES & OLSON LLP
william.orr@mto.com

Blanca Young
MUNGER, TOLLES & OLSON LLP
blanca.young@mto.com